■ SULLIVAN COUNTY GAS SERVICE, INC., et al., Respondents, v PHOENIX MUTUAL LIFE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Appellant. — Mikoll, J. Appeal from a resettled judgment of the Supreme Court in favor of plaintiffs, entered

June 21, 1984 in Sullivan County, upon a decision of the court at Trial Term (Torraca, J.), without a jury.

Plaintiffs seek judgment declaring that past and future hospitalization expenses incurred by and on behalf of plaintiff Louise Wagner were covered expenses under a group major medical policy issued by defendant to the employees of plaintiff Sullivan County Gas Service, Inc. (hereinafter Sullivan). Defendant denied plaintiffs' allegations and interposed affirmative defenses that the facilities where Wagner had been hospitalized, Gaylord Hospital and New Britain Memorial Hospital, were not hospitals as defined in the policy and that Wagner was not an employee of Sullivan. Trial Term held that Wagner was an employee of Sullivan when she incurred a pelvic fracture and a subsequent cardiac arrest, causing permanent brain damage, that Wagner is in permanent need of acute semi-intensive care in a hospital with full respirator facilities, and that the treatment afforded her in both facilities was covered by the major medical group insurance policy issued by defendant to Sullivan's employees. This appeal by defendant ensued.

There should be an affirmance of the judgment. There was ample evidence in the record that Wagner was indeed employed by Sullivan on the day she was injured and was covered under the major medical group insurance contract issued by defendant to Sullivan's employees. We also conclude that the expenses incurred for Wagner's treatment at both Gaylord and New Britain Memorial Hospitals are covered expenses pursuant to the insurance contract.

It is defendant's contention that both of these institutions failed to meet the policy's criteria for a covered hospital and that Trial Term improperly denominated the policy's criteria as exclusions, thereby improperly placing on defendant the burden of proving the exclusion. Notwithstanding Trial Term's denomination of the definition of "hospital" as an exclusion, we find that plaintiffs have proven entitlement to recovery for expenses of treatment in both institutions. We are impelled to this conclusion by the rules of interpretation relevant to contracts generally and to insurance contracts specifically.

Insurance contracts are treated like any other ordinary business contract between individuals and are subject to the same principles of construction (*Hartol Prods. Corp. v Prudential Ins. Co.,* 290 NY 44, 47). A primary rule of construction requires that the contract be construed as a whole and, whenever possible, that all parts be given effect. Where ambiguities exist in a policy, they are to be interpreted against the party who drafted it and in favor of the insured (*supra,* p 49; *see, Thomas J. Lipton,*

*Inc. v Liberty Mut. Ins. Co.*, 34 NY2d 356, 361). Where a policy is not uncertain as to its meaning, the provisions are to be fairly interpreted and enforced as written (*Goodrich v John Hancock Mut. Life Ins. Co.*, 17 AD2d 271). We concur here with plaintiffs' contention that this contract is ambiguous in that the restrictive definition of the term "hospital" as a "short term, acute, general hospital" does not fit within the coverage scheme of the contract. The purpose of this "excess" policy was to cover "Major Medical Expense Benefits" beyond those covered by Blue Cross-Blue Shield.

This leads us to conclude that the contract was not intended to solely cover short-term stays in an acute care facility, but was clearly intended to cover long-term disability or illness. The terms of the contract indicate that the insurer did not place any time limitation for which benefits would be payable. The whole concept of the contract is that of an excess coverage contract, with primary coverage provided by Blue Cross-Blue Shield. This coverage would begin 21 days from inception and continue without limitation as to period of time. It was a reasonable expectation of Sullivan that its employees would be covered for all hospital bills regardless of the length of any hospital stay. The $1,000,000 coverage also buttresses this view of the contract. In no way could major medical benefits paid for by Sullivan be of any utility to its employees if their use is restricted to short-term, acute, general hospitals.

Gaylord and New Britain Memorial Hospitals are licensed by the State of Connecticut as chronic disease hospitals. Under the regulations of the Connecticut Department of Health, these facilities are considered to be "long-term hospitals" which provide diagnosis, care and treatment of chronic diseases (Conn Reg § 19-13-D1 [a]). The record indicates that they offer substantially the same services as short-term, general hospitals, but for long-term illnesses requiring acute care and hospitalization. Consequently, the fair intent and meaning of the coverage sold by defendant to plaintiffs encompasses the expenses of treatment given Wagner in these two facilities.

Judgment affirmed, with costs.

Mahoney, P. J., Casey, Mikoll and Harvey, JJ., concur; Levine, J., dissents and votes to reverse in the following memorandum.

Levine, J. (dissenting). I respectfully dissent. It is indisputable that the coverage under this insurance contract for the cost of in-patient hospital care expressly incorporates the policy's definition of "hospital". Under that definition, Gaylord Hospital and New Britain Memorial Hospital must each be a "short term,

acute, general hospital", meeting "all" of seven additional criteria. Because satisfying all of the various definitional standards is a prerequisite of coverage, Trial Term erroneously treated the issue as one where the insurer had the burden of proving that the claim came within a policy exclusion. Rather, plaintiffs had the burden of proving that Gaylord and New Britain Memorial Hospitals qualified under all of the characteristics set forth in the definition (*Zuckerberg v Blue Cross,* 108 AD2d 56; *Breslow v Manhattan Life Ins. Co.,* 36 AD2d 676, *lv denied* 29 NY2d 482; *see, Taylor v Phoenix Mut. Life Ins. Co.,* 453 F Supp 372).

It is equally clear that plaintiffs failed to prove that Gaylord and New Britain Memorial Hospitals qualified under several of the criteria contained in the definition of a covered hospital, namely, (1) the two hospitals do not provide acute, short-term care, are not licensed to provide such care and in some respects are incapable of providing such care (*e.g.,* neither has emergency room facilities); (2) neither hospital is "primarily engaged" in providing both diagnostic and therapeutic services, since each is primarily a chronic disease facility; and (3) neither hospital has an organized department of major surgery. Trial Term avoided addressing these shortcomings in plaintiffs' proof by erroneously shifting the risk of nonpersuasion to defendant and by finding that plaintiffs established "substantial compliance" with the terms of the policy. However, Trial Term's reliance on substantial compliance to establish conformity with the policy's definition of "hospital" is inconsistent with recent New York precedent and with the prevailing weight of authority in other jurisdictions (*see, Zuckerberg v Blue Cross, supra,* and cases cited therein).

In short, the operative words contained in the policy's definition of "hospital" are precise and definite in meaning and courts are obligated to enforce them as such rather than to rewrite the terms of the policy in accordance with their own notions of what may be equitable as between the parties (*Breed v Insurance Co.,* 46 NY2d 351, 355; *Government Employees Ins. Co. v Kligler,* 42 NY2d 863, 864). Indeed, no one has asserted that the language of the qualifying definition is ambiguous, and, in this regard, it should be noted that the policy repeats verbatim the definition of "hospital" contained in the State Insurance Department's regulation governing the form for New York health insurance policies, inclusive of major medical coverage (11 NYCRR 52.2 [m]).

The majority, however, purports to find an ambiguity in the contract of insurance because of an apparent conflict between its definition of "hospital" as a "short term, acute, general hospital"

and the fact that it is a major medical policy designed to provide benefits beyond the basic, 21-day Blue Cross coverage and is unlimited as to length of hospitalization or cost up to $1,000,000. This position, however, misreads the scope of the benefits provisions of the policy and is based on an assumption not supported in the record. First, the enumerated coverage extends to medical expenses other than those for hospitalization. Second, the coverage applies to a particular sickness, including any recurrence thereof, and is not tied to a single, continuous period of hospitalization. Thus, under any number of conceivable scenarios, there is extensive scope for use of major medical coverage under the policy.

Finally, the majority's conclusion that the limitations arising out of the restrictive definition of "hospital" render the policy's major medical hospital benefits of no utility presumes that extended confinement in a short-term, acute, general hospital cannot occur. There is no evidence in the record to this effect. The testimony that average length of stay in an acute care hospital is less than the 21-day threshold period misses the point and, in any event, is the kind of extrinsic evidence which cannot be used to prove that the parties intended something at variance with the clear meaning of the words of their agreement or to create an ambiguity where none otherwise existed (*Bethlehem Steel Co. v Turner Constr. Co.,* 2 NY2d 456, 460). Perhaps that evidence might have had some relevance if plaintiffs had sought reformation of the insurance contract. Having failed to do so, they are bound by the limitations in coverage contained in the expressed wording of the policy.

For the foregoing reasons, I vote to reverse the judgment entered in favor of plaintiffs and would dismiss the complaint.