[846 NYS2d 430]

Ronald Dombroski et al., Respondents, v Samaritan Hospital et al., Defendants, and Robert Tigue et al., Appellants.

Third Department, November 21, 2007

## APPEARANCES OF COUNSEL

*D'Agostino, Krackeler, Baynes & Maguire, P.C.*, Albany (*Adrienne J. Kerwin* of counsel), for Robert Tigue, appellant.

*Maynard, O'Connor, Smith & Catalinotto*, Albany (*Michael T. Snyder* of counsel), for James Slavin, appellant.

*Thorn, Gershon, Tymann & Bonanni*, Albany (*Mandy M. Mc-Farland* of counsel), for Mark A. Schimelman and another, appellants.

*Kelleher & Maragno, L.L.P.*, Albany (*Anthony M. Maragno* of counsel), for respondents.

## OPINION OF THE COURT

Spain, J.

In March 2003, plaintiff Ronald Dombroski (hereinafter

plaintiff) suffered a stroke and was diagnosed, for the first time, with hypertension and diabetes. Thereafter, he and his wife, derivatively, commenced this medical malpractice action against defendant Samaritan Hospital and three doctors who had treated him there in April 2002 for injuries he sustained in a motorcycle accident. Plaintiff named as individual defendants his attending physician while hospitalized, Isidro Bulatao, emergency physician Robert Tigue and orthopedist James Slavin. Plaintiffs later filed an amended complaint adding as defendants On-Call Medical Services, a facility which plaintiff utilized for healthcare on an as-needed basis, and one of its partners, physician Mark A. Schimelman. Schimelman and On-Call asserted a statute of limitations defense in their answer.

After joinder of issue, Tigue and Slavin moved for summary judgment and plaintiffs moved to strike Schimelman's and On-Call's statute of limitations defense on equitable estoppel grounds. Schimelman and On-Call cross-moved to dismiss the complaint as untimely pursuant to CPLR 3211 (a) (5). Supreme Court denied the summary judgment motions of Tigue and Slavin, denied the motion to dismiss of Schimelman and On-Call and granted plaintiffs' motion to strike Schimelman and On-Call's statute of limitations defense. Slavin, Tigue, Schimelman and On-Call appeal.

■ Turning first to the equitable estoppel issue, we conclude that plaintiffs have failed to allege facts which could establish that Schimelman and On-Call are equitably estopped from asserting the statute of limitations defense. The doctrine of equitable estoppel will " 'bar the assertion of the affirmative defense of the [s]tatute of [l]imitations where it is the defendant's affirmative wrongdoing . . . which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding' " (*Zumpano v Quinn*, 6 NY3d 666, 673 [2006], quoting *General Stencils v Chiappa*, 18 NY2d 125, 128 [1966]). The doctrine will apply " 'where [a] plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action' " (*Zumpano v Quinn*, 6 NY3d at 674, quoting *Simcuski v Saeli*, 44 NY2d 442, 449 [1978]). Significantly, equitable estoppel must be established by "clear and convincing proof" and a plaintiff's "general accusation[s] of . . . deception not based on personal knowledge" are insufficient (*Central Fed. Sav. v Laurels Sullivan County Estates Corp.*, 145 AD2d 1, 6 [1989], *appeal dismissed* 74 NY2d 944 [1989], *lv denied* 76 NY2d 704 [1990]). Even where an intentional misrepresentation is thus established, to invoke the doctrine a plaintiff must "demon-

strate reasonable reliance on the defendant's misrepresentations" (*Zumpano v Quinn*, 6 NY3d at 674) and "due diligence on the part of the plaintiff in bringing [the] action" (*Simcuski v Saeli*, 44 NY2d at 450).

Plaintiffs claim that Schimelman and On-Call should be equitably estopped from asserting the statute of limitations defense because they failed to fully comply with plaintiffs' June 2003 request that On-Call release all of plaintiff's medical records in its possession. According to plaintiffs, because On-Call did not release the Samaritan Hospital records that had been forwarded to them, plaintiffs were led to believe that On-Call did not have knowledge of the information in those records which could have led to a diagnosis of plaintiff's diabetes and, thus, plaintiffs did not name them as defendants. We find these allegations insufficient, even if fully credited, to establish that On-Call and/or Schimelman engaged in affirmative wrongdoing which could form the basis for an equitable estoppel defense. Plaintiffs offer no evidence of an intent to deceive or any affirmative misrepresentation. Schimelman explained in his deposition that it was On-Call's policy that responses to general requests for medical records would include only those generated by On-Call. Plaintiffs rely on this testimony to support the argument that the omission of the hospital records was intentional; however, more is necessary to create a prima facie case for equitable estoppel. It was necessary for plaintiffs to allege that On-Call or Schimelman's conduct transcended mere negligence and amounted to an affirmative, intentional misrepresentation, and this they failed to do (*see Simcuski v Saeli*, 44 NY2d at 454; *Chesrow v Galiani*, 234 AD2d 9, 10 [1996]).

Further, plaintiffs have failed to allege facts which could demonstrate the reasonable reliance and due diligence which are essential to invoke equitable estoppel. Plaintiffs requested that the hospital records be sent to On-Call in May 2002 and, other than On-Call's failure to include the records in response to plaintiffs' June 2003 request, plaintiffs were never given any reason to believe that On-Call never received those records. In addition, plaintiffs' complaint contains allegations concerning treatment by On-Call which predate his hospitalization in 2002. Under these circumstances, we find that the omission of the hospital reports by On-Call and Schimelman was insufficient, in and of itself, to support the conclusion that plaintiffs were "justifiably lulled into inactivity" (*Simcuski v Saeli*, 44 NY2d at 449; *see Putter v North Shore Univ. Hosp.*, 7 NY3d 548, 553-554

[2006]). Accordingly, inasmuch as plaintiffs do not dispute that their claims against On-Call and Schimelman were untimely, On-Call and Schimelman's cross motion to dismiss the amended complaint as against them should have been granted.

■ Next, we turn to Tigue's and Slavin's motions for summary judgment. Both are premised on the assertion that their duty to plaintiff was limited, respectively, to emergency and orthopedic care and did not extend to the alleged failure to properly diagnose his diabetes. "Although physicians owe a general duty of care to their patients, that duty may be limited to those medical functions undertaken by the physician and relied upon by the patient" (*Markley v Albany Med. Ctr. Hosp.*, 163 AD2d 639, 640 [1990] [citations omitted]). It is necessary, therefore, to consider the circumstances under which these physicians provided care to plaintiff to determine if a duty existed to take any steps which might have led to an earlier diagnosis of plaintiff's diabetes.

Following a motorcycle accident, plaintiff arrived at the hospital's emergency room at 6:30 P.M. on April 15, 2002 where Tigue examined him and diagnosed that he had sustained fractured ribs, a fractured clavicle and abrasions. Tigue ordered various X rays and tests, including a complete metabolic profile and urinalysis. The results of the metabolic profile indicated that plaintiff's blood had an elevated glucose level of 253. Tigue apparently received those results while plaintiff was still in the emergency room and noted them, including the elevated glucose level, on plaintiff's chart. Tigue then recommended that plaintiff be admitted to the hospital for treatment of his fractured bones and discharged him from the emergency room; plaintiff was admitted under the care of general surgeon and attending physician Bulatao at approximately 11:30 P.M. The next morning, the urinalysis ordered in the emergency room was performed. The result indicated a glucose level of 1000, which was flagged on the lab report as a "panic value."

Tigue's affidavit in support of his motion for summary judgment concedes that he assumed plaintiff's care while plaintiff was in the emergency room, but contends that any duty to plaintiff ended when plaintiff was admitted to the hospital under the care of the attending physician. Although Tigue was aware of the elevated glucose level in plaintiff's blood, his affidavit and deposition testimony explain that a single test indicating an elevated blood glucose level does not necessarily indicate diabetes and that, among other things, an elevated glucose level could

be caused by the stress of a traumatic accident, or what a patient recently ate. In any event, Tigue asserts that he had no duty to order further tests or investigate the cause of the elevated glucose because his duty to plaintiff ended when plaintiff was discharged from the emergency room.

In our view, Tigue's affidavit and deposition testimony are sufficient to support a prima facie case for summary judgment (see *Wasserman v Staten Is. Radiological Assoc.*, 2 AD3d 713, 714 [2003]; *Horth v Mansur*, 243 AD2d 1041, 1042 [1997]). In opposition, plaintiffs submitted expert testimony of a physician certified in family practice. Without elaboration, plaintiffs' expert states that Tigue had a continuing duty to review and become aware of any tests which he ordered. With respect to whether Tigue's duty to plaintiff included an obligation to follow-up on plaintiff's urinalysis performed after his discharge from the emergency room and Tigue's care, we conclude that plaintiffs' expert's unsupported opinion in this regard is insufficient to raise a triable question of fact. Simply because it is often the first opportunity to do so, an emergency physician is in a position to order a number of tests on a patient. To hold that a continuing duty exists for that emergency physician to follow-up on every one of those tests, even after, as here, the patient has been released to another physician's care and admitted as an inpatient, would be contrary to the limited purpose of an emergency room of providing temporary, short-term care. The duty of emergency physicians to patients coming through the emergency room must be, at some point, severed so that they may move on to treat other patients on an emergency basis.

With respect to the blood test results of which Tigue was admittedly aware, plaintiffs' expert opines that a blood glucose level of 253 milligrams per deciliter is "abnormally high" and demonstrates that plaintiff was hyperglycemic. The expert affidavit does not address Tigue's assertions that factors other than diabetes could explain the elevated glucose level or that an elevated glucose level was in no way relevant to Tigue's emergency treatment of plaintiff but, instead, simply concludes, without elaboration, that Tigue erred in not "properly communicating the results of the serum glucose analysis and the urine glucose analysis with the patient and with the health care team treating the patient during his admission, in particular Dr. Bulatao." It is undisputed, however, that Tigue noted the elevated glucose level in plaintiff's chart prior to discharging him from the emergency room to the inpatient attending physi-

cian, and that the urinalysis had not yet been performed at that time. Under these circumstances, we hold that Tigue—when confronted with lab results which did not indicate any immediate threat to the patient and were not related to Tigue's treatment of plaintiff's trauma, and where plaintiff was being admitted to the hospital under another physician's care—had no duty to take steps beyond noting the results in plaintiff's chart (*see Huffman v Linkow Inst. for Advanced Implantology, Reconstructive & Aesthetic Maxillo-Facial Surgery*, 35 AD3d 214, 216-217 [2006]; *Mosezhnik v Berenstein*, 33 AD3d 895, 897 [2006]). As with the argument that Tigue was obligated to follow-up with every test that he ordered, we find that expanding and continuing an emergency physician's duty to patients in this manner is contrary to the purpose and scope of emergency medicine, and could be detrimental to the effectiveness of the services that emergency physicians provide. Accordingly, we hold that plaintiffs failed to raise a triable issue of fact in response to Tigue's motion for summary judgment, and the motion should have been granted.

Slavin is entitled to summary judgment as well. It is undisputed that Slavin examined plaintiff for the first time on April 17, 2002, when he was called in for an orthopedic consultation during plaintiff's second day in the hospital. Slavin treated plaintiff for pain and conducted one follow-up visit on May 10, 2002 at his office, after which Slavin's medical relationship with plaintiff ended. Although the tests indicating plaintiff's elevated glucose levels were reflected in plaintiff's chart and Slavin admits that ordinarily he would have reviewed the chart, he had no recollection of reviewing the lab reports; in any event, he asserts in support of his motion for summary judgment that "[t]he elevated glucose levels would not have had any effect on my care and treatment of plaintiff for his fractures." Under these circumstances—i.e., where plaintiff was under the care of a different physician, Slavin was consulted to treat plaintiff only with respect to his fractures and no evidence has been submitted that Slavin should have been aware that plaintiff's elevated glucose levels had gone uninvestigated or untreated—Slavin had no duty to scan plaintiff's chart for irregularities outside the scope of that treatment or to act upon them (*see Mosezhnik v Berenstein*, 33 AD3d at 897-898; *Markley v Albany Med. Ctr. Hosp.*, 163 AD2d at 640).

Plaintiffs also assert that, even in the absence of a duty to provide medical care, Tigue and Slavin had a duty, under

ordinary negligence principles, to communicate the results of plaintiff's glucose tests to him or his treating physician (*see Mosezhik v Berenstein*, 33 AD3d at 897-898; *Glasheen v Long Is. Diagnostic Imaging*, 303 AD2d 365, 367 [2003], *lv denied* 100 NY2d 512 [2003]; *Matter of Caracci v State of New York*, 178 AD2d 876, 877 [1991]). As discussed, under the circumstances presented, when plaintiff was admitted to the hospital for further treatment under the care of a different physician and the glucose test results were noted in plaintiff's chart, any duty of Tigue or Slavin to communicate such information was satisfied.

CREW III, J.P., PETERS, LAHTINEN and KANE, JJ., concur.

Ordered that the order is reversed, with one bill of costs, plaintiffs' motion to strike denied, cross motion by defendants On-Call Medical Services and Mark A. Schimelman to dismiss granted, motions by defendants Robert Tigue and James Slavin for summary judgment granted, and complaint dismissed against said defendants.