■ TOWN OF WAWARSING, Appellant, v CAMP, DRESSER & MC-KEE, INC., et al., Respondents. [855 NYS2d 691]—

Malone Jr., J.

Between May 1996 and December 2000, plaintiff entered into a number of agreements with defendant Camp, Dresser & Mc-Kee, Inc. (hereinafter CDM) to provide engineering services for the construction of the Napanoch Water District in the Town of Wawarsing, Ulster County. The construction consisted of five phases. CDM provided both design and onsite resident inspection services during phases I through III, which entailed a hydrogeological investigation, well testing and the construction of the infrastructure and water distribution piping. CDM supervised construction and issued certificates of substantial completion during these phases. Phases IV and V involved the construction of the water storage tank and well field. CDM provided only preconstruction design services during these phases as plaintiff had retained another engineering firm, Brinnier and Larios, P.C., to provide on-site resident inspection services.

CDM sent plaintiff its final invoice for services rendered on the project on July 8, 2002 and issued a certificate of substantial completion with respect to phase III on August 30, 2002. Brinnier issued certificates of substantial completion for phases IV and V on August 28, 2002 and November 27, 2002, respectively. Plaintiff subsequently obtained authorization from the Ulster County Department of Health to start operating the water system. Soon after the system became operational in October 2003, plaintiff discovered that the flow ratio was less than expected and that the water contained high levels of iron and manganese. As a result, on April 20, 2006, plaintiff commenced this action against CDM for professional malpractice.* CDM, in turn, moved to dismiss the action as time-barred or, alternatively, for summary judgment. Supreme Court dismissed the action as untimely and this appeal by plaintiff ensued.

Initially, we note that actions for malpractice against nonmedical professionals are governed by the three-year statute of limitations set forth in CPLR 214 (6) (*see Saint Alexander's Church v McKenna*, 294 AD2d 695, 696 [2002]; *IFD Constr. Corp. v Corddry Carpenter Dietz & Zack*, 253 AD2d 89, 91-92 [1999]). Furthermore, a claim for professional malpractice against an engineer or architect accrues upon the completion of performance under the contract and the consequent termina-

---

* A supplemental complaint was filed in May 2006 naming Camp, Dresser & McKee, a partnership, as an additional defendant.

tion of the parties' professional relationship (*see Frank v Mazs Group, LLC*, 30 AD3d 369, 369-370 [2006]; *Matter of Kohn Pederson Fox Assoc. [FDIC]*, 189 AD2d 557, 558 [1993]; *Board of Educ. of Tri-Val. Cent. School Dist. at Grahamsville v Celotex Corp.*, 88 AD2d 713, 714 [1982], *affd* 58 NY2d 684 [1982]). In determining the date of accrual, the completion of the engineer's obligations must be viewed in light of the particular circumstances of the case (*see Frank v Mazs Group, LLC*, 30 AD3d at 370).

The dispositive issue here is the date upon which plaintiff's claim accrued. Although plaintiff has advanced a number of theories, the parties have conceded that, in view of the immediate trial ordered by Supreme Court upon granting plaintiff's motion for reargument, the only one that need concern this Court is plaintiff's contention that accrual is governed by the remedial provision contained in paragraph A-21 of the parties' March 1997 agreement, which addresses phases I through III of the project. That provision reads, in pertinent part, as follows: "[CDM] will be available to furnish engineering services and consultations necessary to correct unforeseen project operation difficulties for a period of one year after the date of statement of substantial completion of the facility. . . [CDM] will assist [plaintiff] in performing a review of the project during the 11th month after the date of the certificate of substantial completion." Plaintiff argues that following the issuance of the final certificate of completion for the project on November 27, 2002, CDM was obligated under the above provision to review the project in October 2003 and to remedy any problems until November 2003. Plaintiff asserts that its claim did not accrue until one year after November 27, 2002 and that, because this malpractice action was commenced within three years, it is timely.

Initially, we look to the parties' intent as embodied in their agreement to determine when their professional relationship ended. We are guided by basic principles of contract construction which instruct that the provisions of a contract should be construed as a whole with all parts to be given effect (*see 350 E. 30th Parking v Board of Mgrs. of 350 Condominium*, 280 AD2d 284, 287 [2001]; *Sullivan County Gas Serv. v Phoenix Mut. Life Ins. Co. of Hartford*, 111 AD2d 542, 543 [1985]) and that, where unambiguous, the contract language should be given its plain and ordinary meaning (*see State of New York v Robin Operating Corp.*, 3 AD3d 757, 758 [2004]; *TDX Constr. Corp. v Dormitory Auth. of State of N.Y.*, 306 AD2d 115, 116 [2003]). Applying these principles, a review of the March 1997 agreement reveals

that CDM had many responsibilities with respect to the design and oversight of the first three phases of the project, most of which were performed before and during the construction. The remedial provision contained in paragraph A-21 is an exception as, by its plain terms, it contemplates obligations that extend not just beyond CDM's issuance of a certificate of substantial completion for the first three phases, but beyond the date of the issuance of the certificate of substantial completion "of the facility." Significantly, the payment provisions were drafted to take specific account of such obligations insofar as they provide that "[a] final payment to equal 100 percent shall be made when it is determined that all services required by this [a]greement have been completed *except for the services set forth in [s]ection A-21 hereof*" (emphasis added).

The parties entered into another agreement in December 2000 concerning phases IV and V, specifically with respect to the construction of the water storage tank. CDM's responsibilities under this agreement consisted mainly of design services as Brinnier had at this point been retained to perform resident inspection services. Significantly, the December 2000 agreement did not alter or modify the remedial or payment provisions with regard to the work to be performed under the March 1997 agreement. Rather, because it was a separate agreement covering entirely different phases of the project, it contained its own provisions governing when CDM's design services were considered complete and when payment was due. Contrary to CDM's claim, the December 2000 agreement did not supersede the March 1997 agreement with respect to these remedial and payment terms.

It is clear that CDM provided design services over the course of several years throughout all five phases of the project. Plaintiff alleges that the problems that were discovered only after the water system became operational in October 2003 were attributable to certain design defects. The inclusion of the remedial provision in paragraph A-21 of the March 1997 agreement clearly reveals the parties' awareness that problems with such an extensive project might not be apparent until the whole system was substantially complete. The clauses obligating CDM to undertake a review during the 11th month and to take corrective action within 12 months after the issuance of the certificate of substantial completion of the entire project evidence the parties' intent that their professional relationship continue until that time. The fact that plaintiff did not specifically request CDM to perform these obligations does not nullify CDM's contractual obligations. Nor does CDM's submission of

its final invoice for services in July 2002 signal the end of the parties' relationship, particularly in view of the payment provisions of the March 1997 agreement. Based upon the circumstances presented, we conclude that the claim did not accrue until the parties' professional relationship ended and that this occurred when CDM's obligations under paragraph A-21 of the March 1997 agreement terminated (*see e.g. Vogelsang v McQuestion*, 136 Misc 2d 176 [1987]). Inasmuch as this was less than three years prior to the commencement of the action, we find that it was timely. Notwithstanding CDM's claim to the contrary, the remedial provision at issue does not constitute an agreement to extend the statute of limitations of the type that was declared invalid by the Court of Appeals in *John J. Kassner & Co. v City of New York* (46 NY2d 544 [1979]).

Cardona, P.J., Peters, Carpinello and Rose, JJ., concur. Ordered that the order is reversed, with costs, and motion denied. [*See* 13 Misc 3d 1240(A), 2006 NY Slip Op 52192(U).]