■ CITY OF BINGHAMTON, Appellant, v HAWK ENGINEERING P.C., Respondent. [925 NYS2d 705]—

Garry, J. Appeal from an order of the Supreme Court (Reynolds Fitzgerald, J.), entered August 27, 2010 in Broome County, which, among other things, granted defendant's motion for summary judgment dismissing the complaint.

In 2003, defendant, an engineering firm, entered into a contract to provide plaintiff with a design for the rehabilitation of a bridge. Defendant delivered the plans in September 2005 and submitted its final bill in November 2005. The bridge was completed in October 2007. In December 2007, the Department of Transportation (hereinafter DOT) inspected the bridge, discovered cracking in certain structures, and issued a "Red Flag report" recommending a check of the capbeam cantilever design. Plaintiff engaged McFarland-Johnson, Inc. (hereinafter McFarland), another engineering firm, to perform a strength analysis of the pier cap cantilevers. In January 2008, the firm reported that the structures' strength was inadequate. In March 2008, plaintiff reported these findings to defendant and requested that it review its design computations. Defendant engaged a third engineering firm, Modjeski and Masters (hereinafter M & M), to review its design. M & M identified certain design errors and recommended repairs. Plaintiff asked defendant to pay for these repairs in June 2008. Thereafter, DOT found increased cracking in the bridge structures and issued a second Red Flag report. Plaintiff again asked defendant to contract and pay for the repair, and defendant turned the matter over to its attorney and insurance carrier.

In April 2009, plaintiff commenced this action alleging breach of contract, negligence and professional malpractice. Defendant moved for summary judgment dismissing the complaint, and plaintiff cross-moved for summary judgment on the issue of de-

fendant's liability. Supreme Court found that plaintiff's claims were barred by the three-year limitations period for professional malpractice, granted defendant's motion, and denied plaintiff's cross motion. Plaintiff appeals.

Initially, Supreme Court properly determined that plaintiff's claim is essentially one for professional malpractice and, thus, the three-year limitations period of CPLR 214 (6) applies, rather than the six-year period for breach of contract actions. Plaintiff's complaint alleges that defendant breached the contract by violating a contractual "duty and obligation to use ordinary skill, care, and diligence in rendering their professional services." This claim "comes within the purview of CPLR 214 (6), regardless of whether the theory is based in tort or in a breach of contract" (Rev Assembly Mem in Support, Bill Jacket, L 1996, ch 623, at 6; accord Matter of R.M. Kliment & Frances Halsband, Architects [McKinsey & Co., Inc.], 3 NY3d 538, 541-542 [2004]). Plaintiff's argument that its breach of contract claim should survive based upon defendant's contractual obligation to correct errors in its plans was raised for the first time in an affidavit in opposition to defendant's motion for summary judgment and, thus, "cannot bar relief which is otherwise appropriate" (Scanlon v Stuyvesant Plaza, 195 AD2d 854, 855 [1993]). Further, plaintiff has never alleged that defendant breached that obligation or that plaintiff was damaged as a result (see Clearmont Prop., LLC v Eisner, 58 AD3d 1052, 1055 [2009]); instead, the complaint and record demonstrate that plaintiff's alleged damages arose from defendant's refusal to fully cover the costs of repairing the bridge. Thus, the breach of contract claim was properly dismissed as time-barred (see Matter of R.M. Kliment & Frances Halsband, Architects [McKinsey & Co., Inc.], 3 NY3d at 541-542; see also Matter of Stantec Consulting Group [Fonda-Fultonville Cent. School Dist.], 36 AD3d 1051, 1052 [2007], lv denied 9 NY3d 807 [2007]).

Plaintiff next contends that Supreme Court erred in determining that its malpractice claim accrued no later than November 2005, arguing that the cause of action did not accrue until construction of the bridge was complete. We disagree. Ordinarily, "a claim for professional malpractice against an engineer or architect accrues upon the completion of performance under the contract and the consequent termination of the parties' professional relationship" (Town of Wawarsing v Camp, Dresser & McKee, Inc., 49 AD3d 1100, 1101-1102 [2008]). Plaintiff's argument regarding the termination date is based upon a contractual provision that required defendant to "provide design response to unanticipated or changed field conditions, analyze and partic-

ipate in proposed design changes, and interpret design plans" if certain conditions occurred during construction. The argument relies upon *Town of Wawarsing*, in which this Court found that a town's malpractice action against an engineering firm did not accrue until the end of a 12-month period after substantial completion of the project, during which the parties' contract obligated the firm to provide certain review and corrective services (*id.* at 1102-1104). Notably, in addition to preconstruction design responsibilities, the engineering firm in *Town of Wawarsing* had multiple contractual obligations to provide design, supervision and inspection services throughout all five phases of construction, as well as additional obligations after construction was complete (*id.* at 1102-1103). Further, the payment provision at issue in that matter explicitly recognized that certain services would be provided after final payment for the completion of the contract (*id.* at 1103). In contrast, defendant's noncontingent obligations under the contract here were limited to preconstruction design services and included no inspection or supervisory responsibilities. After receiving final payment pursuant to the contract in November 2005, defendant had no further obligation to provide any additional services unless plaintiff specifically requested them (*compare Frank v Mazs Group, LLC*, 30 AD3d 369, 369-370 [2006]).*

"[W]e look to the parties' intent as embodied in their agreement to determine when their professional relationship ended" (*Town of Wawarsing v Camp, Dresser & McKee, Inc.*, 49 AD3d at 1102). The termination "must be judicially interpreted in light of the given situation and the responsibilities of the parties in carrying out their agreement" (*Board of Educ. of Tri-Val. Cent. School Dist. at Grahamsville v Celotex Corp.*, 88 AD2d 713, 714 [1982], *affd* 58 NY2d 684 [1982]). Here, the parties' agreement, read as a whole, embodies their intent for their professional relationship to terminate upon submission of defendant's final design or, at the latest, upon final payment for that design, except in the event of contingencies that did not occur. Accordingly, Supreme Court properly concluded that the malpractice cause of action accrued, at the latest, in November 2005, when defendant submitted its final bill for preconstruction design services.

Plaintiff next contends that the statute of limitations was tolled by the doctrine of continuous representation, which "recognizes that a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the

---

* No such requests were made.

techniques employed or the manner in which the services are rendered" (*Shumsky v Eisenstein*, 96 NY2d 164, 167 [2001] [citation omitted]; *accord Matter of Clark Patterson Engrs., Surveyor, & Architects, P.C. [City of Gloversville Bd. of Water Commrs.]*, 25 AD3d 984, 986 [2006], *lv denied* 6 NY3d 714 [2006]). As with the continuous treatment doctrine applicable to medical malpractice, the relationship must be continuous, and both parties must expect it to continue (*see Plummer v New York City Health & Hosps. Corp.*, 98 NY2d 263, 268 [2002]). No such expectations were demonstrated here. When DOT notified plaintiff of the cracks in the bridge, plaintiff did not rely upon defendant's continued professional services, despite DOT's express recommendation of a design review; instead, plaintiff first consulted with McFarland, a competing engineering firm (*compare Matter of Clark Patterson Engrs., Surveyor, & Architects, P.C. [City of Gloversville Bd. of Water Commrs.]*, 25 AD3d at 986-987). Only after obtaining McFarland's report assigning blame to defendant's inadequate design—four months after receiving DOT's first Red Flag report and some 2½ years after final payment—did plaintiff contact defendant. Plaintiff's correspondence with defendant thereafter was copied to its attorney (*see Schloss v Albany Med. Ctr.*, 278 AD2d 614, 615 [2000], *lv denied* 96 NY2d 707 [2001]), and the course of events does not otherwise demonstrate continued reliance on defendant's professional services and good faith. The interactions between plaintiff and defendant after the 2½-year interruption constituted a resumption, rather than a continuation, of their previous professional relationship, and so fails to establish the applicability of the doctrine (*see Aulita v Chang*, 44 AD3d 1206, 1210 [2007]; *Fox v Glens Falls Hosp.*, 129 AD2d 955, 956-957 [1987]). Thus, the statute of limitations was not tolled.

Finally, plaintiff asserts that defendant is estopped from relying on the statute of limitations as it worked and corresponded with plaintiff after discovery of the design defect. "Equitable estoppel is an extraordinary remedy which applies where a party is prevented from filing an action within the applicable statute of limitations due to his or her reasonable reliance on deception, fraud or misrepresentations by the other" (*Pulver v Dougherty*, 58 AD3d 978, 979-980 [2009] [internal quotation marks, brackets and citations omitted]; *see Dombroski v Samaritan Hosp.*, 47 AD3d 80, 82-83 [2007]). Plaintiff did not meet its burden to establish by clear and convincing evidence that defendant engaged in affirmative misconduct (*see Cellupica v Bruce*, 48 AD3d 1020, 1021 [2008]). Defendant's initial cooperation with plaintiff's requests to review its design calculations and devise a solution to the problem did not constitute decep-

tive or otherwise wrongful conduct, nor did plaintiff show that defendant took "affirmative steps to prevent . . . plaintiff from bringing a claim" (*Zumpano v Quinn*, 6 NY3d 666, 674 [2006]). Moreover, plaintiff did not "demonstrate a lack of knowledge of the true facts" (*Pulver v Dougherty*, 58 AD3d at 980). Accordingly, equitable estoppel did not act as a toll, and the action was properly dismissed as untimely.

Peters, J.P., Spain, McCarthy and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.