■ MIRIAM PARRILLA, Respondent, v JOHN BUCCELLATO, Appellant, et al. Defendant. [944 NYS2d 604]—

In an action to recover damages for medical malpractice and wrongful death, the defendant John Buccellato appeals from so much of an order of the Supreme Court, Kings County (Bunyan, J.), dated January 19, 2011, as denied his motion for summary judgment dismissing the complaint insofar as asserted against him.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, and the motion of the defendant John Buccellato for summary judgment dismissing the complaint insofar as asserted against him is granted.

At 8:07 A.M. on January 5, 2006, 79-year-old Ramon Parilla-Torres (hereinafter the decedent) was admitted to the emergency room at The Brooklyn Hospital Center (hereinafter the hospital) complaining of wheezing and nonproductive cough for the prior three days. Upon admission, his condition was classified as "non-urgent" by a triage nurse. After being examined by

the emergency room resident, an electrocardio-gram (hereinafter EKG) revealed that the decedent had atrial fibrillation. At 9:30 A.M., the defendant John Buccellato (hereinafter the appellant), the attending physician in the emergency room, examined the decedent and authored a note indicating an initial impression of new onset atrial fibrillation and new onset congestive heart failure. A laboratory analysis of the decedent's cardiac enzymes subsequently indicated that he was suffering from an evolving myocardial infarction (hereinafter MI). Approximately two hours after the decedent was admitted to the emergency room, the appellant referred the patient to a cardiac care service that admitted the decedent and took over the management of his condition. At approximately 6:00 P.M. that evening, the decedent died from, inter alia, acute MI.

Thereafter, the plaintiff, the decedent's daughter and administratrix of his estate, commenced this action against, among others, the appellant to recover damages for medical malpractice and wrongful death, alleging, among other things, that the decedent should not have been classified as "non-urgent" by the triage nurse, that the appellant should have ordered a cardiology consult once the results of the EKG were received, and that the decedent should have been administered nitroglycerine at some point prior to his death. The appellant moved for summary judgment dismissing the complaint insofar as asserted against him, and the Supreme Court, inter alia, denied the motion. We reverse the order insofar as appealed from.

The appellant demonstrated his prima facie entitlement to judgment as a matter of law by establishing, through an expert's affirmation, that he did not depart from good and accepted medical practice in treating the decedent and that, in any event, his treatment was not a proximate cause of the decedent's death (see *Nunez v Long Is. Jewish Med. Ctr.-Schneider Children's Hosp.*, 82 AD3d 724, 725 [2011]; *Arkin v Resnick*, 68 AD3d 692 [2009]). His expert opined that, in his role as an emergency room physician, the appellant properly prescribed anticoagulants and medications to control the decedent's ventricular rate. His expert further opined that the appellant properly admitted the decedent to a cardiac care unit at the hospital once the lab results of the decedent's cardiac enzymes became available, indicating that the decedent was suffering from an MI. Furthermore, the expert opined that the appellant's treatment played no part in causing the decedent's cardiogenic shock and heart failure, which occurred several hours after he had been transferred to the cardiac care service. Contrary to the plaintiff's

contention, the appellant's responsibility for the decedent ended when his care was transferred to another attending physician (*see Dombroski v Samaritan Hosp.*, 47 AD3d 80 [2007]).

In opposition, the plaintiff failed to raise a triable issue of fact. The plaintiff's experts opined that the decedent's presentation in the emergency room and the results of the EKG performed while the decedent was still under the appellant's care suggested that the decedent was suffering from an MI approximately an hour before the lab results showing the decedent's elevated cardiac enzymes confirmed this diagnosis. The experts opined that the appellant therefore departed from good and accepted medical practice by failing to order a cardiology consult once the results of the EKG were received. However, the plaintiff's experts failed to raise a triable issue of fact as to whether this alleged departure, which resulted in a delay of about an hour in referring the decedent to the cardiac care service, was a proximate cause of the decedent's death (*see Orsi v Haralabatos*, 89 AD3d 997, 998 [2011], *lv granted* 18 NY3d 809 [2012]; *Wilkins v Khoury*, 72 AD3d 1067, 1068 [2010]; *see generally Stukas v Streiter*, 83 AD3d 18, 24 [2011]). Furthermore, the remaining allegations of malpractice cited by the plaintiff's experts were conclusory and failed to differentiate between the acts and omissions of the different treatment providers (*see Mosezhnik v Berenstein*, 33 AD3d 895, 897 [2006]; *Dellacona v Dorf*, 5 AD3d 625, 625 [2004]; *Kaplan v Hamilton Med. Assoc.*, 262 AD2d 609, 610 [1999]). Accordingly, the Supreme Court should have granted the appellant's motion for summary judgment dismissing the complaint insofar as asserted against him. Skelos, J.P., Belen, Lott and Miller, JJ., concur.