Bubar v Brodman (2019 NY Slip Op 08294)





Bubar v Brodman


2019 NY Slip Op 08294


Decided on November 15, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 15, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, LINDLEY, AND DEJOSEPH, JJ.


881 CA 18-01785

[*1]DONNA M. BUBAR, INDIVIDUALLY, AND AS EXECUTRIX OF THE ESTATE OF RAYMOND BUBAR, DECEASED, PLAINTIFF-RESPONDENT,
v
RICHARD BRODMAN, M.D., ET AL., DEFENDANTS, AND DOROTHY URSCHEL, ANCP-C, DEFENDANT-APPELLANT. (APPEAL NO. 1.) 






GIBSON, MCASKILL & CROSBY, LLP, BUFFALO (MICHAEL J. WILLETT OF COUNSEL), FOR DEFENDANT-APPELLANT.
RICHARD P. VALENTINE, ESQ., P.C., BUFFALO (RICHARD P. VALENTINE OF COUNSEL), FOR PLAINTIFF-RESPONDENT.


 Appeal from an order of the Supreme Court, Erie County (Frederick J. Marshall, J.), entered July 17, 2018. The order denied the motion of defendant Dorothy Urschel, ANCP-C for summary judgment. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, the motion is granted and the complaint is dismissed against defendant Dorothy Urschel, ANCP-C.
Memorandum: This medical malpractice action arises from a coronary artery bypass and aortic valve replacement surgery performed on plaintiff's decedent (decedent) by defendant Richard Brodman, M.D. and decedent's post-operative care by all defendants. In appeal No. 1, defendant Dorothy Urschel, ANCP-C appeals from an order denying her motion for summary judgment dismissing the complaint against her. In appeal No. 2, defendants Michael Cellino, M.D. and Buffalo Medical Group, P.C. (collectively, Cellino defendants) appeal from an order that, inter alia, denied that part of their motion seeking summary judgment dismissing the complaint against them. In appeal No. 3, Brodman and defendant Buffalo Cardiothoracic Surgical, PLLC (collectively, Brodman defendants) appeal from an order that, inter alia, denied in part their motion for summary judgment dismissing the complaint against them.
We note at the outset that the facts of this case provide the opportunity for this Court to review the appropriate standard for burden-shifting in medical malpractice cases. It is well settled that a defendant moving for summary judgment in a medical malpractice action " has the burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby' " (O'Shea v Buffalo Med. Group, P.C., 64 AD3d 1140, 1140 [4th Dept 2009], appeal dismissed 13 NY3d 834 [2009] [emphasis added]; see Bagley v Rochester Gen. Hosp., 124 AD3d 1272, 1273 [4th Dept 2015]). As stated in O'Shea, once a defendant meets that prima facie burden, "[t]he burden then shift[s] to [the] plaintiff[] to raise triable issues of fact by submitting a physician's affidavit both attesting to a departure from accepted practice and containing the attesting [physician's] opinion that the defendant's omissions or departures were a competent producing cause of the injury" (64 AD3d at 1141 [internal quotation marks omitted and emphasis added]).
Upon review, we conclude that the burden that O'Shea places on a plaintiff opposing a summary judgment motion with respect to a medical malpractice claim is inconsistent with the law applicable to summary judgment motions in general (see generally Alvarez v Prospect Hosp., [*2]68 NY2d 320, 324 [1986]; Mills v Niagara Frontier Transp. Auth., 163 AD3d 1435, 1437, 1439 [4th Dept 2018]). We therefore conclude that, when a defendant moves for summary judgment dismissing a medical malpractice claim, "[t]he burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact only after the defendant physician meets the initial burden . . . , and only as to the elements on which the defendant met the prima facie burden" (Bhim v Dourmashkin, 123 AD3d 862, 864 [2d Dept 2014]; see Stukas v Streiter, 83 AD3d 18, 24-26 [2d Dept 2011]). To the extent that O'Shea and its progeny state otherwise, those cases should no longer be followed.
We now consider the merits of these appeals in light of that conclusion. In appeal No. 1, we agree with Urschel that Supreme Court erred in denying her motion, and we therefore reverse the order in that appeal. Urschel met her initial burden on the motion by presenting factual evidence that she complied with the applicable standard of care for a registered nurse practitioner, including deposition testimony and her own detailed affidavit that "address[ed] each of the specific factual claims of negligence in . . . plaintiff's bill of particulars" (Wulbrecht v Jehle, 89 AD3d 1470, 1471 [4th Dept 2011] [internal quotation marks omitted]; see Webb v Scanlon, 133 AD3d 1385, 1386 [4th Dept 2015]). We further agree with Urschel that she established that any duty on her part for decedent's anticoagulation therapy regime ended when management of that aspect of decedent's care was transferred to his primary care physician, Cellino (see Pigut v Leary, 64 AD3d 1182, 1183 [4th Dept 2009]; see also Parrilla v Buccellato, 95 AD3d 1091, 1093 [2d Dept 2012]; Dombroski v Samaritan Hosp., 47 AD3d 80, 86 [3d Dept 2007]).
The affidavit of plaintiff's expert nurse practitioner failed to raise a triable issue of fact in opposition. Contrary to the expert's contention, Urschel's review of laboratory reports relevant to decedent's anticoagulation therapy regime on which Urschel's office had been copied subsequent to decedent's hospital discharge does not raise a triable issue of fact whether she retained any authority to manage the anticoagulation therapy regime (see generally Donnelly v Parikh, 150 AD3d 820, 822-823 [2d Dept 2017]). Further, the opinion of plaintiff's expert that Urschel failed to properly respond to signs and symptoms of infection in decedent is improperly based on speculation that an active infection existed at a surgical site within days of decedent's discharge from the hospital (see generally Diaz v New York Downtown Hosp., 99 NY2d 542, 544 [2002]; Occhino v Fan, 151 AD3d 1870, 1871 [4th Dept 2017]) and thus does not raise a triable issue of fact with respect thereto (see Simmons v Brooklyn Hosp. Ctr., 74 AD3d 1174, 1178 [2d Dept 2010], lv denied 16 NY3d 707 [2011]). In opposition to Urschel's motion, plaintiff disputed Urschel's entitlement to summary judgment only with respect to the claims related to an alleged mismanagement of signs and symptoms of infection and decedent's post-operative anticoagulation therapy regime. Therefore, any other claims are deemed abandoned (see Donna Prince L. v Waters, 48 AD3d 1137, 1138 [4th Dept 2008]).
In appeal No. 2, we agree with the Cellino defendants that, contrary to the conclusion of the court, the affidavit of Cellino submitted in support of their motion sufficiently "address[ed] each of the specific factual claims of negligence in . . . plaintiff's bill of particulars" (Wulbrecht, 89 AD3d at 1471 [internal quotation marks omitted]; see Webb, 133 AD3d at 1386). In opposition, plaintiff addressed only the claims related to the alleged deficiencies in Cellino's management of decedent's anticoagulation therapy regime. Therefore, the remaining claims are deemed abandoned, and the court erred in denying the Cellino defendants' motion with respect to those claims against them (see Donna Prince L., 48 AD3d at 1138). Thus, we modify the order in appeal No. 2 accordingly.
With respect to the claims regarding decedent's anticoagulation therapy regime, we conclude that Cellino's affidavit was sufficiently " detailed, specific and factual in nature' " to establish that the Cellino defendants did not deviate from the standard of care applicable to that regime (Webb, 133 AD3d at 1386). The Cellino defendants failed, however, to establish the lack of a causal connection between any alleged deviation from the applicable standard of care on Cellino's part and decedent's injuries. In an opposing affidavit, plaintiff's expert physician opined that Cellino deviated from the applicable standard of care by failing to use enoxaparin injections to timely remedy decedent's subtherapeutic anticoagulation levels, which were indicated by his blood test results. On appeal, the Cellino defendants do not dispute that the opinion of plaintiff's expert raised a triable issue of fact regarding Cellino's deviation from the applicable standard of care and, instead, contend that it constituted a new theory of negligence [*3]improperly raised by plaintiff for the first time in opposition to their motion. We reject that contention inasmuch as the allegation that Cellino failed to timely administer enoxaparin injections is a theory encompassed in the allegations contained in plaintiff's bill of particulars that Cellino failed to properly manage decedent's anticoagulation therapy regime (see Salvania v University of Rochester, 137 AD3d 1607, 1608 [4th Dept 2016]; cf. Hinson v Anderson, 159 AD3d 494, 494 [1st Dept 2018]).
The Cellino defendants further contend that plaintiff failed to raise a triable issue of fact with respect to proximate cause. Inasmuch as plaintiff bears the burden of raising a triable issue of fact "only as to the elements on which the defendant met the prima facie burden" (Bhim, 123 AD3d at 864), as concluded above, the court properly denied the motion of the Cellino defendants with respect to the claims related to Cellino's alleged mismanagement of decedent's anticoagulation therapy regime.
In appeal No. 3, the Brodman defendants contend that the court erred in denying their motion in part. We agree, and we reverse the order in appeal No. 3 insofar as appealed from. We note at the outset that plaintiff's opposition to the motion of the Brodman defendants was limited to those claims related to Brodman's alleged failure to maintain hemostasis and control blood loss during decedent's initial surgery, to document the reopening of decedent during that surgery, to recognize and treat the signs and symptoms of decedent's infection, and to properly manage decedent's anticoagulation therapy regime. Plaintiff therefore abandoned her remaining claims against the Brodman defendants (see Donna Prince L., 48 AD3d at 1138).
We agree with the Brodman defendants that they established that any duty on Brodman's part for decedent's anticoagulation therapy ended when management of that aspect of decedent's care was transferred to Cellino (see Pigut, 64 AD3d at 1183; see also Parrilla, 95 AD3d at 1093; Dombroski, 47 AD3d at 86). The opinion of plaintiff's expert physician to the contrary, like the affidavit of the expert nurse practitioner in appeal No. 1, is based on the continued receipt by Brodman's office of laboratory reports related to decedent's anticoagulation therapy and does not raise a triable issue of fact whether he retained any authority to manage the anticoagulation therapy regime (see generally Donnelly, 150 AD3d at 822-823). Further, the Brodman defendants met their initial burden of establishing that Brodman did not deviate from the applicable standard of care with respect to the management of decedent's signs and symptoms of infection. In opposition, plaintiff submitted the affidavit of her expert, wherein the expert speculates that an active infection existed at a surgical site during the days following decedent's hospital discharge. As concluded above, that assumption is not supported by the record (see Diaz, 99 NY2d at 544; Simmons, 74 AD3d at 1178).
With respect to Brodman's alleged failure to maintain hemostasis and control blood loss during decedent's initial surgery, the Brodman defendants met their initial burden by submitting factual evidence that Brodman complied with the applicable standard of care during the initial surgery and when he surgically reopened decedent to determine whether any surgical site bleeding was missed, including Brodman's own deposition testimony and the detailed affidavit of the Brodman defendants' expert physician (see generally Webb, 133 AD3d at 1386; Wulbrecht, 89 AD3d at 1471). In opposition, although plaintiff's expert physician opined that there was a causal connection between decedent's excessive transfusions during the operation and the infection that led to his claimed injuries, the expert did not specify what deviation of the applicable standard of care on Brodman's part caused the excessive bleeding that necessitated those transfusions. Indeed, the expert neither disputes the necessity of reopening decedent to address the excessive bleeding nor challenges the appropriateness or sufficiency of Brodman's administration of dilutional coagulopathy treatment to reduce the bleeding rate.
Finally, although Brodman asserted in his deposition testimony that it was an "oversight" to not dictate an addendum to the operative report after surgically reopening decedent, the Brodman defendants' expert physician opined that this oversight was not a deviation from the applicable standard of care and that the existent operative report fully apprised subsequent healthcare professionals of all pertinent information regarding the procedure. The Brodman defendants therefore met their initial burden with respect to that claim by establishing that Brodman neither deviated from the applicable standard of care nor was the alleged deviation a proximate cause of decedent's injuries. In opposition, assuming, arguendo, that plaintiff's expert raised a triable issue of fact with respect to deviation, we conclude that the expert failed to raise a [*4]triable issue of fact with respect to proximate cause. The expert opined generally that Brodman's failure to dictate an addendum to the operative report "deprived medical providers who would later attempt to manage [decedent's] post-operative recovery of pertinent information which could have aided them in their efforts." The expert does not specify, however, what "pertinent information" should have been included or how decedent's post-operative care might have been affected had such information been documented. The court therefore erred in failing to grant the Brodman defendants' motion in its entirety.
Entered: November 15, 2019
Mark W. Bennett
Clerk of the Court