■ CATHERINE CHULLA, Appellants, v SARINA DiSTEFANO et al., Respondents. [662 NYS2d 570] —In an action to recover damages for medical malpractice, etc., the plaintiffs appeal from an order of the Supreme Court, Westchester County (Colabella, J.), entered July 9, 1996, which (1) denied that branch of their motion which was to strike the second affirmative defense of the defendants Sarina DiStefano and Sleepy Hollow Medical Group, P. C., based on the Statute of Limitations with respect to all alleged acts of malpractice occurring before July 15, 1990, (2) granted the motion of the defendants Sarina DiStefano and Sleepy Hollow Medical Group, P. C., for partial summary judgment dismissing as time-barred those causes of action asserted against them which were based on the alleged acts of malpractice occurring before July 15, 1990, (3) denied that branch of the plaintiffs' motion which was to strike the second affirmative defense based on the Statute of Limitations and the fourth affirmative defense of lack of personal jurisdiction of the defendants Fertility and Hormone Center of Montefiore Medical Center and Dr. Barry Witt, and (4) granted the motion of the defendants Fertility and Hormone Center of Montefiore Medical Center and Dr. Barry Witt for summary judgment dismissing the complaint insofar as asserted against them.

Ordered that the order is affirmed, with one bill of costs.

In January 1993 Catherine Chulla and her husband, Richard Chulla, commenced this action to recover damages for injuries allegedly caused by the defendants' negligence in failing to diagnose Catherine's breast cancer in a timely manner and in exacerbating her condition with the implantation of a birth-control device known as "Norplant". The Supreme Court, *inter alia*, dismissed as time-barred those claims arising out of the alleged acts of malpractice committed before July 15, 1990, by the Sleepy Hollow Medical Group, P. C., and Dr. Sarina DiStefano, Catherine's gynecologist. On appeal, the plaintiffs contend that the continuous treatment doctrine tolled the Statute of Limitations. We disagree.

An action for medical malpractice must be commenced within two-and-one-half years from the date of accrual (CPLR 214-a). Under the continuous treatment doctrine, however, the two-and-one-half-year period does not begin to run until after the patient's last treatment "when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint" (*Borgia v City of New York,* 12 NY2d 151, 155).

Although Catherine Chulla successfully established that an ongoing physician-patient relationship with Dr. DiStefano and the Sleepy Hollow Medical Group, she failed to demonstrate that either defendant provided continuous treatment for the condition that gave rise to her lawsuit. From September 1989 to July 1991, Catherine Chulla consulted these defendants for prenatal and postpartum care, as well as birth control advice. Contrary to our dissenting colleague's contentions, while breast examinations may have been performed during these visits, there was no diagnosis of cancer and no course of treatment was rendered or prescribed. Quite the opposite, the doctors assured Catherine Chulla that because of her youth, there was no cause for concern. Moreover, the gravamen of the plaintiffs' complaint is that the defendants failed to detect her breast cancer in a timely manner. As was stated in *Nykorchuck v Henriques* (78 NY2d 255, 259), "[w]hile the failure to treat a condition may well be negligent, we cannot accept the self-contradictory proposition that the failure to establish a course of treatment is a course of treatment". Under these circumstances, the continuous treatment doctrine does not toll the Statute of Limitations (*see, Fisher v Felix,* 201 AD2d 453; *Holic v Chabot,* 209 AD2d 924; *Washington v Elahi,* 192 AD2d 704; *cf., Allende v New York City Health & Hosps. Corp.,* 90 NY2d 333; *Cox v Kingsboro Med. Group,* 88 NY2d 904; *Ganess v City of New York,* 85 NY2d 733; *Altomare v Schulman,* 236 AD2d 494; *Grippi v Jankunas,* 230 AD2d 826).

In addition, the Supreme Court properly dismissed the complaint insofar as asserted against Dr. Barry Witt and the Fertility and Hormone Center of Montefiore Medical Center (hereinafter the fertility center). Dr. Witt merely supervised Dr. DiStefano when she inserted the Norplant device in Catherine Chulla's left arm at the fertility center. Although physicians owe a general duty of care to their patients, that duty may be limited to those medical functions undertaken by the physician and relied on by the patient (*see, Markley v Albany Med. Ctr. Hosp.,* 163 AD2d 639, 640; *Murphy v Blum,* 160 AD2d 914, 915). The plaintiffs' other contentions do not warrant the denial of summary judgment in favor of Dr. Witt and the fertility center. Rosenblatt, J. P., Thompson and Sullivan, JJ.

Friedmann, J. concurs in part and dissents in part and votes to modify the order appealed from by (1) deleting the provisions thereof which denied that branch of the plaintiffs' motion which was to strike the Statute of Limitations affirmative defense of the defendants Sarina DiStefano and Sleepy Hollow Medical Group, P. C., and substituting therefor a provision

granting that branch of the plaintiffs' motion, and (2) deleting the provision thereof which granted the motion of the defendants Sarina DiStefano and Sleepy Hollow Medical Group, P. C., for partial summary judgment dismissing all causes of action based on malpractice committed prior to July 15, 1990, and substituting therefor a provision denying the motion.

I respectfully dissent from so much of the majority's determination as affirms the Supreme Court's grant of partial summary judgment to the defendants Sarina DiStefano and Sleepy Hollow Medical Group, P. C. (hereinafter Sleepy Hollow), barring all causes of action based on treatment antedating July 15, 1990. My review of the record suggests that the issue of whether or not the continuous treatment doctrine should be applied to toll the Statute of Limitations as against these defendants remains a question of fact that should be decided by a jury.

On August 24, 1989, in the course of a routine physical examination at her place of employment, the 23-year-old plaintiff, Catherine Chulla, was informed of a "thickening" in her right breast. Because, *inter alia*, there was a history of breast cancer in her family, Catherine decided to consult her gynecologists, the defendant Sleepy Hollow, where she had been a patient since she became pregnant with her first child in 1988.

At her appointment on September 1, 1989, Catherine was examined by one of Sleepy Hollow's partners, who noted the familial history of breast cancer. According to the physician's own records, he "reassured" Catherine that her breasts were merely undergoing benign "cystic changes". At her deposition, Catherine testified that this doctor told her not to worry because, as she was so young, "he was sure it was nothing". She related that the doctor promised he would "order a baseline mammography when [she] was 27, if it would make [her] feel better".

Six months later, on March 9, 1990, Catherine returned to Sleepy Hollow for a routine prenatal examination in connection with her second pregnancy. The defendant Dr. Sarina DiStefano examined her on that occasion, testifying at her deposition that as a matter of routine she palpated Catherine's breasts and detected no masses.

Thereafter there is a conflict in the testimony as to whether Catherine continued to complain of the lump during subsequent prenatal visits. Dr. DiStefano did not "recall" any such complaints, but both the plaintiff and her husband distinctly remembered Catherine expressing her anxieties about breast cancer to Sleepy Hollow doctors on more than one occasion,

and being told by Dr. DiStefano that because she was so young her apprehensions were "farfetched". Catherine's daughter was born on September 19, 1990.

When Catherine noticed that the lump was growing, she again brought it to Dr. DiStefano's attention in June 1991, and a malignancy was diagnosed in July 1991. On August 12, 1991, at the age of 25, Catherine underwent a right modified radical mastectomy. According to her brief, it has recently been discovered that her cancer has metasticized. The plaintiffs commenced the instant action against, *inter alia*, Dr. DiStefano and Sleepy Hollow in January 1993.

In my opinion, on this record, the plaintiff has created a triable issue of fact as to the exact nature of her continuing visits to the offices of the defendants DiStefano and Sleepy Hollow (*see, e.g., Bartolo v Monaco,* 202 AD2d 535). That is, if the plaintiffs are believed, these defendants were arguably sufficiently alerted to Catherine's complaints of a possible breast malignancy such that their alleged negligence in attending to it could constitute a species of continuous treatment for the same condition which gave rise to the claim of malpractice so as to toll the Statute of Limitations (*see,* CPLR 214-a; *Mc-Dermott v Torre,* 56 NY2d 399; *Borgia v City of New York,* 12 NY2d 151; *Koenigsberg v Tannous,* 225 AD2d 734). Put somewhat differently, the defendants have not established as a matter of law that the treatment they rendered prior to July 15, 1990, was exclusively for a condition separate and distinct from the condition claimed to have been negligently treated (*see, e.g., Yelin v American Dental Ctr.,* 184 AD2d 693; *Mc-Kinney v Bay Ridge Med. Group,* 126 AD2d 711; *cf., Cox v Kingsboro Med. Group,* 88 NY2d 904; *Ganess v City of New York,* 85 NY2d 733; *Nykorchuck v Henriques,* 78 NY2d 255). Accordingly, I would submit to a jury the issue of whether the continuous treatment doctrine should be applied to this case (*see, e.g., Yelin v American Dental Ctr., supra*).