[945 NYS2d 25]

RUBIN SCHRON et al., Plaintiffs, and CAMMEBY's EQUITY HOLD-
INGS LLC, Respondent, v TROUTMAN SANDERS LLP et al.,
Defendants, and LEONARD GRUNSTEIN et al., Appellants.
MICH II HOLDINGS LLC et al., Plaintiffs, and SVCARE HOLD-
INGS, LLC, et al., Appellants, v RUBIN SCHRON et al., De-
fendants, and CAMMEBY's EQUITY HOLDINGS LLC, Respon-
dent.

First Department, May 22, 2012

**APPEARANCES OF COUNSEL**

*DLA Piper LLP (US)*, New York City (*Shand S. Stephens, Anthony P. Coles* and *Michael R. Hepworth* of counsel), for appellants.

*Dechert LLC*, New York City (*Andrew J. Levander, Steven A. Engel* and *Nicolle L. Jacoby* of counsel), for respondent.

## OPINION OF THE COURT

CATTERSON, J.

In this action, the defendants are seeking to avoid the plain language of an option to purchase a national nursing-home company by incorporating into it a separate loan agreement through the use of parol evidence. Two motion courts correctly rejected this tortured argument and we therefore affirm.

Plaintiff Rubin Schron is a real estate investor who operates through various entities using the names Cammeby's and Cam-Elm (all managed by Schron and majority-owned by his immediate family). Defendant-appellant Leonard Grunstein , a partner at Troutman Sanders LLP (formerly at Jenkens Gilchrist Parker Chapin LLP), was formerly Schron's attorney. Defendant-appellant Murray Forman, an investment banker, was formerly Schron's investment banker.

In December 2004, at Grunstein's and Forman's urging, Schron and his companies (sometimes hereinafter referred to collectively as Schron) financed a $1.3 billion acquisition of the assets of Mariner Health Services, Inc., a public company operating numerous nursing homes. Schron paid $14 million to a small investment bank predominantly owned by Forman and Grunstein, who had structured the deal. Grunstein and his law firm (then Jenkens & Gilchrist) drafted the 2004 transactional documents and the 2006 amended refinancing documents.

Schron provided $1.1 billion in cash, lines of credit and mortgages, and effectively guaranteed the remaining loans from a third-party lender. It is undisputed that neither Grunstein or Forman contributed any funds to the transaction.

A Schron entity, SMV Property Holdings LLC (hereinafter referred to as SMV) acquired Mariner's real estate. Grunstein persuaded Schron to lease the nursing home facilities to Grunstein's brother; SVCare (managed by Grunstein and Forman) and its operating subsidiary, Sava, were formed for that purpose. Less than two months after the closing, Grunstein's brother transferred SVCare to Canyon Sudar Partners, LLC, which was wholly-owned by Grunstein and Forman, for the nominal sum of $10.

In connection with the Mariner transaction, a Schron entity, Cammeby's Funding III, LLC, agreed to make a $100 million loan to SVCare; the loan agreement was amended in 2006. The 2004 loan agreement contained a merger clause, as did its 2006 amendment.

Prior to the amendment, the loan had been described as collateral for other loans made to SMV; Grunstein and Forman had certified to third-party lenders that the loan had been made; the loan was reflected in Sava's audited financial statements; and Grunstein and Forman had their attorneys describe the loan as outstanding in communications with the Department of Justice.

Also in connection with the Mariner transaction, SVCare and Canyon Sudar granted Cammeby's Equity Holdings LLC (hereinafter referred to as Cam Equity) an option to purchase SVCare. The option, as amended in 2006, had a five-year term permitting its exercise by June 9, 2011.

The consideration for the option was "the mutual covenants and agreements hereinafter set forth, *and other good and valuable consideration (the receipt and adequacy of which is hereby acknowledged* by the Parties)" (emphasis added). The consideration for exercising the option was $100 million, "all or a portion of which may be paid through assumption, satisfaction or other elimination of [SVCare's] liability on debt in the dollar amount of the component of the exercise price paid by this method." The manner of payment was at Cam Equity's discretion. If, after exercising the option, Cam Equity sold SVCare, any net proceeds over $400 million would be paid to SVCare.

The option agreement also contained a merger clause: it "supersedes and completely replaces all prior and other representations, . . . other agreements and understandings . . . with respect to the matters contained in this Agreement." It is undisputed that the agreement did not mention the $100 million loan from Cammeby's Funding III, LLC (an entity separate from option-holder Cam Equity), or that the option was security for a loan from another party.

On March 23, 2010, Grunstein and Forman filed *Mich II Holdings LLC v Schron* (index No. 600736/2010), seeking, inter alia, to declare the option invalid. In the complaint, Grunstein and Forman alleged that the option agreement is one of the loan documents, the option was granted in consideration for cancellation of the $100 million loan indebtedness, but the option was void because the loan was never made.

On June 22, 2010, Cam Equity gave written notice to SVCare of its intent to exercise the option. In August 2010, Schron filed the amended verified complaint in *Schron v Grunstein* (index No. 650702/2010), alleging that Grunstein and Forman had structured the Mariner deal, drafted the documents and induced

him to enter into the transaction, breaching their fiduciary duties and committing related business torts. Schron sought specific performance of the option.

In October 2010, Cam Equity moved in limine in *Schron* to exclude parol evidence that Grunstein claimed would show that (1) the $100 million loan was the "other good and valuable consideration" for the option, and (2) the loan was not funded, rendering the option void for lack of consideration. Schron also moved in *Mich II* to dismiss Grunstein's cause of action to declare the option void. The arguments on the motions are identical and our analysis applies to each motion equally.

Cam Equity relied on the merger/integration clause in the option agreement in support of its argument that no understanding extrinsic to the option agreement could be used to interpret it. It maintained that the "mutual covenants and agreements" constituting the consideration were the promises to pay SVCare $100 million at closing and to pay it the excess above $400 million if Mariner's operations were sold to a third party.

Cam Equity further contended that the option agreement should be construed against Grunstein, whose (conflicted) law firm had drafted it; it was simply not plausible that they would have omitted $100 million in consideration from the option's terms. Finally, Cam Equity argued that Grunstein was estopped from denying that the loan funds had never been provided, since Grunstein and his codefendants in *Schron* had repeatedly acknowledged that the $100 million loan was made.

In opposition, Forman simply reiterated his and Grunstein's pleadings, that the loan was the consideration for the option and that the option was security for the loan. He averred that Schron had stated that he always understood that the option was merely security for the loan. Although Forman admitted signing papers stating that the loan had been funded, he claimed those statements were not accurate and had only been made under the belief that the funds would be provided; however, he asserted that the funds were never provided.

The motion court (Justice Yates) granted the motion in limine and granted the motion to dismiss Grunstein and Forman's cause of action to declare the option void. The motion court found the loan and option agreements to be separate, not interdependent, because, although executed and amended on the same date, they had separate "assents," contained no cross references and had only a partial identity of parties (i.e., since one had Cam Equity and the other had Cammeby's Funding III,

LLC). Also, they were drafted by sophisticated parties, including attorneys.

The court found that the proffered parol evidence was inadmissible based on the merger clause in the option agreement showing that it was a fully integrated document. Furthermore, the evidence that Grunstein and Forman sought to introduce would modify the agreement to require new and additional consideration not included in the option agreement itself.

Finally, the motion court held that the option agreement was unambiguous as to the meaning of consideration. The option price and the loan amount were both $100 million. However, this did not create an ambiguity, but merely constituted a coincidence. While the court recognized that parol evidence is admissible to explain consideration or to show whether it had in fact been given even where its receipt is recited in an agreement, the court found that the option agreement contemplated the exchange of mutually beneficial covenants whereby Grunstein and Forman would not only receive $100 million upon exercising the option, but also the promise of any excess above $400 million if Mariner's operations were sold. The court reasoned that, had the sophisticated parties intended to make the loan a condition precedent to the right to exercise the option, they could have expressly done so; however, there was no clear language of condition.

After Justice Yates retired, Grunstein and Forman moved for reargument before Justice Sherwood, who granted reargument and adhered to Justice Yates' determination. Justice Sherwood rejected Grunstein's and Forman's arguments that Justice Yates had overlooked the phrase "other good and valuable consideration" and had misapplied the parol evidence rule.

■ The motion courts correctly found that the loan agreement and option agreement involved separate assents, the Schron-controlled parties to each agreement were different (an equity entity and a funding entity), and the agreements contained no cross references to each other. Thus, the loan agreement and the option agreement were not interdependent and should not be read as a unitary obligation even though they were executed at the same time. (*See Rudman v Cowles Communications*, 30 NY2d 1, 13 [1972] ["when two parties have made two separate contracts it is more likely that promises made in one are not conditional on performances required by the other"] [internal quotation marks omitted]; *Applehead*

*Pictures LLC v Perelman*, 80 AD3d 181, 189 [1st Dept 2010]; *Unclaimed Prop. Recovery Serv., Inc. v UBS PaineWebber Inc.*, 58 AD3d 526 [1st Dept 2009] [no cross references identifying referenced documents beyond all reasonable doubt]; *cf. Movado Group, Inc. v Mozaffarian*, 92 AD3d 431 [1st Dept 2012] [terms and conditions of another document were incorporated].)

The courts correctly recognized that there was absolutely no language of condition making the funding of the loan an express condition precedent to the right to exercise the $100 million option. (*See Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.*, 86 NY2d 685, 691 [1995].) Further, we find that the parol evidence rule precluded the use of extrinsic evidence to show the claimed interdependence. (*See Transammonia, Inc. v Enron Capital & Trade Resources Corp.*, 278 AD2d 152, 153 [1st Dept 2000].)

The motion courts correctly found that the option agreement provided that the parties' stated mutually beneficial covenants constituted the consideration, and that any additional consideration for the option, such as the claimed loan funds, was impermissibly at variance with that provision pursuant to the merger and integration clauses. The merger and integration clauses are explicit and therefore bar the use of parol evidence of the parties' intent and of any other agreements or understandings. (*Fundamental Long Term Care Holdings, LLC v Cammeby's Funding LLC*, 92 AD3d 449 [1st Dept 2012]; *Torres v D'Alesso*, 80 AD3d 46 [1st Dept 2010].) The defendants' attempt to distinguish our holding in *Torres* on the grounds that fulfillment of the loan agreement constituted consideration for the option agreement whereas *Torres* dealt with a condition precedent to closing of title in a real estate transaction, is unavailing.

█ Because consideration was unambiguously acknowledged, parol evidence was inadmissible as an aid in interpretation. Further, absent ambiguity, there was also no reason to resort to contra proferentum to construe the option agreement against the drafter-attorney. (*See Fernandez v Price*, 63 AD3d 672, 676 [2d Dept 2009] [contra proferentum is a last resort]; *Stern v Cigna Group Ins.*, 2008 WL 4950067, *2, 2008 US App LEXIS 24017, *4 [2d Cir 2008] [same].)

Defendants' argument that *Sharon Steel Corp. v Chase Manhattan Bank, N.A.* (521 F Supp 104 [SD NY 1981], *affd* 691 F2d 1039 [2d Cir 1982], *cert denied* 460 US 1012 [1983]) and *Travelers Cas. & Sur. Co. of Am. v Trataros Constr., Inc.* (11

Misc 3d 1092[A], 2006 NY Slip Op 50829[U] [2006]) support the use of parol evidence in the instant case is in error. In *Travelers*, the court allowed parol evidence only on the factual dispute over whether the listed consideration was actually received by one party to the contract. Of course, in this case, defendants are seeking to redefine "consideration" in the option agreement itself, not whether an enumerated consideration was actually received. Indeed, in *Travelers*, Supreme Court held that "the 'parol evidence rule pertains to contract terms, not assertions of fact.' " (*Id.* at *7, quoting *TIE Communications, Inc. v Kopp*, 218 Conn 281, 291, 589 A2d 329, 334 [1991].) This is consistent with precedent that parol evidence can be used to establish or rebut asserted facts, not to vary the unambiguous terms of a contract. (*See e.g. Ehrlich v American Moninger Greenhouse Mfg. Corp.*, 26 NY2d 255 [1970]; *Adirondack Bank v Simmons*, 210 AD2d 651 [3d Dept 1994].)

The District Court in *Sharon Steel*, on the other hand, allowed parol evidence to establish "the understanding of the parties" with respect to "good and valuable consideration" in the context of the boilerplate provision of the contract at issue. (521 F Supp at 111.) The motion court correctly distinguished *Sharon Steel* from the instant case because the SVCare option agreement expressly defines consideration by reference to the mutual exchange of promises in the agreement.

Because the consideration consisted of mutual covenants, and not the loan, there was no occasion to use parol evidence to show that consideration was lacking because the loan funds had not been advanced (*see Ehrlich*, 26 NY2d at 258), or that there was a condition precedent to the effectiveness of the contract and it had not been satisfied (*see Mack-Lowe v Picault-Cadet*, 33 AD3d 504 [1st Dept 2006], citing *Hicks v Bush*, 10 NY2d 488, 491 [1962]).

We reject the defendants' argument that parol evidence was necessary to show that the option agreement was not intended to be an option at all, but a security device. (*Cf. Lombard & Co. v De La Roche*, 235 AD2d 333 [1st Dept 1997].) The rule allowing parol evidence to show that a security device was intended applies only to documents appearing to be absolute conveyances (*see Marsh v McNair*, 99 NY 174, 178-179 [1885]); the option agreement was not and did not purport to be one.

We recognize that the foregoing analysis appears to render the "other consideration" phrase in the option agreement meaningless, in violation of a cardinal rule of interpretation.

(*See Ronnen v Ajax Elec. Motor Corp.*, 88 NY2d 582, 589 [1996].) However, some documents do use meaningless boilerplate and, in our view, the rule should not be carried to absurd lengths to imbue meaning into every legalistic jotting.

Accordingly, the order of Supreme Court, New York County (James A. Yates, J.), entered January 25, 2011, which granted plaintiff Cammeby's Equity Holdings LLC's motions to exclude parol evidence of whether a loan was a condition precedent to the validity of the option to purchase up to 99.99% of all membership units in SVCare Holdings LLC (in *Schron v Grunstein*, index No. 650702/10) and to dismiss the cause of action for a declaration that the option is void (in *Mich II Holdings LLC v Schron*, index No. 600736/10), should be affirmed, with costs. The appeals from the order of the same court (O. Peter Sherwood, J.), entered September 15, 2011, which upon reargument, adhered to the original determination, and the order, same court and Justice, entered October 11, 2011, which clarified that the reargument order entered in *Mich II Holdings LLC v Schron* also applied to *Schron v Grunstein*, should be dismissed, without costs, as academic.

Tom, J.P., Acosta and Freedman, JJ., concur with Catterson, J.

Order, Supreme Court, New York County entered January 25, 2011, affirmed, with costs. Appeals from order, same court, entered September 15, 2011, and October 11, 2011, dismissed, with costs, as academic.