In an action to recover damages for medical malpractice, lack of informed consent, and wrongful death, etc., the defendants John Pannone and Nephrology Associates of Brooklyn appeal, and the defendants Carl Tack and Shore Road Radiology Associates, PC., separately appeal, as limited by their respective briefs, from so much of an order of the Supreme Court, Kings County (Steinhardt, J), dated May 16, 2012, as granted the plaintiff’s motion for leave to reargue her opposition to those branches of their separate motions which were for summary judgment dismissing the causes of action alleging medical malpractice and *803 wrongful death, and her derivative cause of action, insofar as asserted against them, which had been granted in an order of the same court (Rosenberg, J.), dated November 7, 2011, and, upon reargument, in effect, vacated those portions of the order dated November 7, 2011, which granted those branches of the separate motions, and thereupon denied those branches of the separate motions.
Ordered that the order dated May 16, 2012, is reversed, on the law, with one bill of costs payable to the appellants appearing separately and filing separate briefs, the plaintiffs motion for leave to reargue is denied, and those portions of the order dated November 7, 2011, which granted those branches of the separate motions which were for summary judgment dismissing the causes of action alleging medical malpractice and wrongful death, and the derivative cause of action, insofar as asserted against them are reinstated.
The plaintiff is the widow of the decedent, Nafis Ahmed, and the executor of his estate. The decedent, who was a surgeon, had diabetes, high blood pressure, and renal insufficiency. According to the plaintiff, in 2004, the decedent began experiencing problems with his legs. The decedent’s physician, nonparty Dr. Kang, recommended that the decedent undergo an angiogram, to evaluate whether the decedent’s kidney function was compromised. Kang recommended that the defendant Dr. Carl Tack perform the angiogram. The defendant Dr. John Pannone, a nephrologist, was to be involved in the procedure to, among other things, “protect the [decedent’s] kidney.” On August 22, 2004, the decedent was admitted to the defendant Lutheran Medical Center for the angiogram. The decedent’s condition following the first angiogram “wasn’t bad.” He was able to walk, sit, and use the bathroom on his own. Additionally, after the first angiogram, the decedent’s creatinine level, which can be indicative of a risk of renal failure, was normal to mildly elevated, and had actually fallen slightly since the decedent was admitted to the hospital. The following day, Pannone indicated that Kang wanted the decedent to have a second angiogram, “to get the other kidney done.” According to the plaintiff, the decedent originally stated that he preferred to undergo an additional angiogram “after a month, maybe.” However, subsequently, the decedent agreed to remain in the hospital and undergo a second angiogram to “get it done with and put it behind” him. Following the second angiogram, the decedent felt pain in his calf and his toes, and he could not stand. He complained of a burning sensation. The decedent was discharged two days following the second procedure. Thereafter, the *804 decedent “got very sick.” He was vomiting and passing dark urine. It is undisputed that, in September 2004, the decedent went to the hospital, where it was discovered that he had acute renal failure, demonstrated by, among other things, elevated creatinine levels. The decedent began dialysis treatment. In 2007, the decedent underwent a kidney transplant, and subsequently died as a result of complications.
The plaintiff and the decedent originally commenced this action in 2006. The plaintiff amended the complaint in 2008 to reflect the decedent’s death and to assert a cause of action to recover damages for wrongful death. The defendants Tack and Shore Road Radiology Associates, EC. (hereinafter together the Radiology defendants), together with the defendant Lutheran Medical Center (hereinafter Lutheran), moved for summary judgment dismissing the complaint insofar as asserted against them. Thereafter, the defendants Pannone and Nephrology Associates of Brooklyn (hereinafter together the Nephrology defendants) separately moved for summary judgment dismissing the complaint insofar as asserted against them. The plaintiff opposed the separate motions, relying on two expert affirmations. Both of the plaintiff’s experts concluded, with a reasonable degree of medical certainty, that the decedent’s kidney failure was caused by the defendants’ malpractice in performing the second, contraindicated, intravenous contrast angiogram, resulting in nephrotoxicity.
In an order dated November 7, 2011, the Supreme Court (Rosenberg, J.), granted the defendants’ separate motions. The court concluded that the defendants established their prima facie entitlement to judgment as a matter of law, and that, in opposition, the plaintiffs expert affirmations were insufficient to raise a triable issue of fact.
The plaintiff moved for leave to reargue her opposition to those branches of the defendants’ separate motions which were to dismiss the causes of action alleging medical malpractice and wrongful death, as well as the derivative cause of action, insofar as asserted against the Pannone defendants and the Radiology defendants. The plaintiff expressly declined to seek reargument concerning the cause of action premised on lack of informed consent and with respect to any claims against Lutheran.
In the order appealed from, the Supreme Court (Steinhardt, J.) granted the plaintiffs motion for leave to reargue, and, upon reargument, in effect, vacated so much of the order dated November 7, 2011, as granted those branches of the defendants’ motions, and thereupon denied the subject branches of the defendants’ separate motions. The court determined that the de *805 fendants established their prima facie entitlement to judgment as a matter of law. However, the court further concluded that, in opposition, through her expert affirmations, the plaintiff succeeded in raising a triable issue of fact. The court concluded that, contrary to the determination in the November 7, 2011, order, the plaintiff’s expert affirmations were not conclusory. The Nephrology defendants and the Radiology defendants separately appeal. We reverse.
“A motion for leave to reargue ‘shall be based upon matters of fact or law allegedly overlooked or misapprehended by the court in determining the prior motion, but shall not include any matters of fact not offered on the prior motion’ ” (Grimm v Bailey, 105 AD3d 703, 704 [2013], quoting CPLR 2221 [d] [2]; see Matter of American Alternative Ins. Corp. v Pelszynski, 85 AD3d 1157, 1158 [2011]). “While the determination to grant leave to reargue a motion lies within the sound discretion of the court, a motion for leave to reargue is not designed to provide an unsuccessful party with successive opportunities to reargue issues previously decided, or to present arguments different from those originally presented” (Matter of Anthony J. Carter; DDS, P.C. v Carter, 81 AD3d 819, 820 [2011] [citations and internal quotations omitted]).
Here, the Supreme Court improvidently exercised its discretion in granting reargument, as the plaintiff failed to demonstrate that the court overlooked or misapprehended any matters of fact or law in determining the defendants’ separate motions for summary judgment.
“ ‘The essential elements of medical malpractice are (1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury’ ” (Poter v Adams, 104 AD3d 925, 926 [2013], quoting DiMitri v Monsouri, 302 AD2d 420, 421 [2003]; see Hayden v Gordon, 91 AD3d 819, 820 [2012]; Guzzi v Gewirtz, 82 AD3d 838 [2011]). “On a motion for summary judgment, a defendant physician ‘must make a prima facie showing that there was no departure from good and accepted medical practice or that the plaintiff was not injured thereby’ ” (Poter v Adams, 104 AD3d at 926, quoting Stukas v Streiter, 83 AD3d 18, 24 [2011]; see Gillespie v New York Hosp. Queens, 96 AD3d 901, 902 [2012]; Healy v Damus, 88 AD3d 848, 849 [2011]; Heller v Weinberg, 77 AD3d 622, 622-623 [2010]). “Once a defendant has made such a showing, the burden shifts to the plaintiff to ‘submit evidentiary facts or materials to rebut the prima facie showing by the defendant physician’ (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]), but only as to those elements on which the defendant
*806 met the prima facie burden” (Poter v Adams, 104 AD3d at 926; see Stukas v Streiter, 83 AD3d at 23-24; Gillespie v New York Hosp. Queens, 96 AD3d at 902; Garrett v University Assoc. in Obstetrics & Gynecology, P.C., 95 AD3d 823, 825 [2012]).
As the Supreme Court correctly concluded, the defendants in their separate motions established their prima facie entitlement to judgment as a matter of law, shifting the burden to the plaintiff. In opposition to the defendants’ separate motions, and in support of her motion for leave to reargue (see generally CPLR 2221 [d] [2]), the plaintiff relied on the affirmations of two physicians, one board-certified in internal medicine and nephrology, and the other board-certified in diagnostic, interventional, and vascular radiology. In the November 7, 2011, order granting the defendants’ separate motions, the Supreme Court determined that these affirmations consisted of conclusory and unsupported allegations, that they failed to address the salient issues concerning the defendants’ alleged departures from accepted medical practice, and that they failed to respond to relevant issues raised by the defendants’ experts. We agree, and conclude that these affidavits were conclusory and speculative, and that they failed to respond to relevant issues raised by the defendants’ experts (see generally Khosrova v Westermann, 109 AD3d 965, 967 [2013]; Sukhraj v New York City Health & Hosps. Corp., 106 AD3d 809, 810 [2013]). While one of the plaintiffs experts concluded that certain of the decedent’s symptoms were consistent with nephrotoxicity resulting from the use of intravenous contrast in the procedures, both affirmations were speculative in concluding that the decedent’s condition was, in fact, caused by the actions of the defendants in performing the second angiogram. Moreover, the plaintiffs experts failed to differentiate between the acts and omissions of the various defendants (see Parrilla v Buccellato, 95 AD3d 1091, 1093 [2012]; Rebozo v Wilen, 41 AD3d 457, 459 [2007]). Thus, these affirmations were insufficient to raise a triable issue of fact, and, in granting the defendants’ separate motions in the November 7, 2011, order, the court did not overlook or misapprehend any matters of fact or law. Additionally, because the cause of action to recover damages for wrongful death and the derivative cause of action were both premised on the defendants’ alleged malpractice, the same conclusion applies to these causes of action. Accordingly, the Supreme Court should have denied the plaintiff’s motion for leave to reargue. Dickerson, J.P., Austin and Sgroi, JJ., concur.
Hinds-Radix, J., dissents and votes to affirm the order appealed from, with the following memorandum: The plaintiff’s *807 decedent, Dr. Nafis Ahmed, was a 62-year-old vascular surgeon who had been diagnosed with renal insufficiency, high blood pressure, and diabetes. In July 2004, he sought treatment for pain in his legs, and was advised to undergo an angiogram with contrast in order to evaluate vascular insufficiency. The angiogram was performed on August 26, 2004, and indicated that the decedent needed a stent in the left renal artery. Another angiogram was performed the next day, on August 27, 2004, to address the left common iliac artery. According to the plaintiff’s deposition testimony, after the first procedure, the decedent could walk and go to the bathroom, but after the second procedure, he could not walk, and experienced pain in his legs, including burning. The next day, he started vomiting, and passed dark urine. On September 17, 2004, the decedent was hospitalized with acute renal failure.
This action, commenced in 2006, alleged, inter alla, lack of informed consent, and that the defendants committed medical malpractice, causing the decedent to suffer “contrast induced nephrotoxicity,” that is, that the second angiogram was performed too close in time to the first angiogram, thereby causing damage to his kidneys from the dye used in the procedure. On July 19, 2007, the decedent received a kidney transplant, and he died on July 30, 2007, of complications from that procedure.
The defendants Carl Tack and Shore Road Radiology Associates, P.C. (hereinafter together the Radiology defendants), together with the defendant Lutheran Medical Center (hereinafter Lutheran), moved for summary judgment dismissing the complaint insofar as asserted against them, and the defendants John Pannone and Nephrology Associates of Brooklyn (hereinafter together the Nephrology defendants) separately moved for similar relief as to them. In support of their motions, the defendants submitted medical and hospital records, deposition testimony, and two expert affirmations. In opposition, the plaintiff submitted two of her own experts’ affirmations.
The Nephrology defendants’ expert stated that it was not Pannone’s function to determine whether to proceed with the second contrast procedure on August 27, 2004; his function was solely to protect the kidneys from contrast, in the event that a decision was made to proceed with the contrast procedure. Although the decedent’s creatinine level of 1.8mg/dl after the first procedure was slightly lower than the 1.9mg/dl measured the previous day, indicating some improved kidney function, Pan-none acknowledged that he had “reservations” about a second angiogram which would rechallenge the kidneys with dye. Pan- *808 none claimed that he urged the decedent to wait, but the decedent, after consultation with his primary care physician, who is not a party to this action, chose to have the second angiogram. The expert further stated that after the second procedure, the decedent had no complaints, but the creatinine level increased to 2.0mg/dl, indicating a cholesterol embolism, which caused the decedent’s kidneys to fail.
The Radiology defendants’ expert stated that, when deciding to perform the second procedure, Tack “properly relied upon the clearance of the patient for the performance of the procedures by Dr. Pannone.” This expert stated that “there is no set time period required to pass in between arteriograms,” and the decision to proceed with the second procedure so soon after the first was a matter of “clinical judgment.” The expert acknowledged that the decedent complained of “ ‘crampy’ abdominal pain” after the first procedure, and explained this was not unusual. After the second procedure, the decedent’s creatinine levels went up to 2.0mg/dl, and he experienced leg pain, which was consistent with a cholesterol embolism, which may occur spontaneously and even without recent vascular catherizations.
The plaintiffs expert nephrologist concluded that based upon the decedent’s medical history of insulin-dependent diabetes, hypertension, and chronic renal insufficiency, as evidenced by his urea nitrogen level of 37 and creatinine level of 2.0mg/dl upon admission to the hospital, the “decedent was at a greatly elevated risk for acute renal failure due to the intravenous contrast.” The plaintiff’s nephrologist stated that “within a reasonable degree of medical certainty, . . . subjecting the plaintiffs decedent to IV contrast a second time within twenty-four hours was a departure from good and accepted practice.” She further noted that the decedent’s symptoms after the second procedure — which included leg pain and burning, vomiting, and dark urine — were “consistent with nephrotoxicity due to the IV contrast,” and “within a reasonable degree of medical certainty,” her opinion was that the decedent’s injuries were “directly and proximately caused by defendants’ malpractice, specifically performing the second, contraindicated IV contrast” procedure.
The plaintiffs expert radiologist reiterated the opinion of the nephrologist that, based upon the decedent’s medical history of insulin-dependent diabetes, hypertension, and chronic renal insufficiency, as evidenced by his urea nitrogen level of 37 and creatinine level of 2.0mg/dl upon admission to the hospital, “the plaintiffs decedent was at a greatly elevated risk for acute renal *809 failure due to the intravenous contrast.” The radiologist further stated that the decedent’s leg pain immediately after the second procedure indicated that in the event that the decedent suffered a cholesterol embolism, “within a reasonable degree of medical certainty, ... It was caused by the second contraindicated procedure.”
In reply, the Radiology defendants and Lutheran Medical Center acknowledged that the “plaintiff may have raised an issue of fact as to whether it was a departure for the second procedure to have been performed within two days of the first,” but attributed that alleged departure to Pannone, who cleared the decedent for the procedure, and the decedent, who consented to the procedure. Pannone reiterated his argument that the decedent, “as a vascular surgeon, knowing full well the risks, [decided] that he would go forward with the procedure.”
In an order dated November 7, 2011, the Supreme Court (Rosenberg, J.), granted the defendants’ separate motions, concluding that they established their entitlement to judgment as a matter of law, and that the plaintiffs experts’ affidavits in opposition were insufficient, because they were conclusory and failed to address salient issues in the record. The example cited of a failure to address a salient issue in the record was the plaintiffs experts’ failure to address the fact that the decedent agreed to two angiograms using contrast on consecutive days and “had more knowledge than the average patient of the risks and benefits of the procedure because he was a vascular surgeon.” However, the evidence in the record indicated that the decedent had no experience in the field of nephrology and none or very little experience in internal medicine.
In December 2011, the plaintiff filed a notice of appeal from that order and moved for leave to reargue her opposition to those branches of the defendants’ motions which sought summary judgment dismissing the causes of action alleging medical malpractice and wrongful death, as well as the derivative cause of action, insofar as asserted against the Radiology defendants and the Nephrology defendants. The plaintiff asserted that the Supreme Court misapplied a controlling principle of law by deeming the plaintiffs experts’ affirmations deficient as a matter of law based solely on an issue of informed consent, to wit, the fact that the decedent was a vascular surgeon with an awareness of the risks of the procedures involved. The plaintiff further argued that, contrary to the court’s conclusion, her experts’ affirmations were not deficient as a matter of law, but rather, raised triable issues of fact with respect to the causes of action sounding in medical malpractice. She disputed the finding that *810 the opinions of her experts were set forth in conclusory terms, noting, inter alla, that the experts stated, with a reasonable degree of medical certainty, that the August 27, 2004, procedure was a departure from good and accepted medical practice, and that departure caused the decedent to develop contrast-induced nephrotoxicity, which in turn resulted in acute renal failure.
Since Justice Rosenberg had retired, the reargument motion was assigned to Justice Steinhart. In the order appealed from, dated May 16, 2012, Justice Steinhart agreed with the plaintiffs contention that Justice Rosenberg “misapplied a principle of law by deeming plaintiffs experts’ affirmations deficient as a matter of law and by holding that the experts failed to raise a triable issue of fact,” granted leave to reargue and, upon reargument, in effect, vacated so much of the order dated November 7, 2011, as granted those branches of the defendants’ motions which sought summary judgment dismissing the causes of action alleging medical malpractice and wrongful death, and the derivative cause of action, insofar as asserted against the Nephrology defendants and the Radiology defendants, and thereupon denied those branches of the motions.
Contrary to the contention of the Nephrology defendants and the Radiology defendants, the plaintiff was not using the remedy of reargument as a substitute for a timely direct appeal. The plaintiff filed a notice of appeal from the original determination, as well as moved for leave to reargue (see Bermudez v New York City Hous. Auth., 199 AD2d 356, 357 [1993]). Once the motion for reargument was decided, the appeal from the original determination was academic.
Contrary to the conclusion of my colleagues in the majority, reargument was properly granted. The decision of whether to grant reargument is within the sound discretion of the motion court (see Matter of Anthony J. Carter, DDS, P.C. v Carter, 81 AD3d 819, 820 [2011]). A motion for reargument “ ‘is not designed to provide an unsuccessful party with successive opportunities to reargue issues previously decided, or to present arguments different from those originally presented’ ” (id. at 820, quoting McGill v Goldman, 261 AD2d 593, 594 [1999]). The movant must make an effort to demonstrate in what manner the court, in rendering the original determination, overlooked or misapprehended the relevant facts or law (see Nicolia v Nicolia, 84 AD3d 1327, 1329 [2011]; Matter of Anthony J. Carter, DDS, P.C. v Carter, 81 AD3d at 820). Once the court reviews the merits of the movant’s arguments, the court, by doing so, has granted reargument, and must determine whether to adhere to the original determination, or alter the original determi *811 nation (see McNeil v Dixon, 9 AD3d 481, 482 [2004]). If the movant has alleged that the original determination overlooked or misapprehended the relevant facts or law, and the court disagrees, it will adhere to the original determination.
Here, the plaintiff did not submit any new material in support of her motion for reargument, and relied upon the same experts’ affirmations. Further, she alleged several instances of how the court, in rendering the original determination, overlooked or misapprehended the relevant facts or law. Since Justice Steinhardt was new to the case, she could not analyze those issues without reviewing the merits of the plaintiffs arguments (see Schron v Troutman Sanders LLP, 97 AD3d 87 [2012]). Once she did so, she granted reargument (see e.g. Baez v Marcus, 58 AD3d 585 [2009]; Chase Manhattan Mtge. Corp. v Anatian, 22 AD3d 625 [2005]). The question before her was whether, upon reargument, she should vacate portions of the prior determination, or adhere to the portions of the prior determination challenged upon reargument (see Askew v City of New York, 70 AD2d 942 [1979]).
Upon reargument, the Supreme Court denied those branches of the summary judgment motions which sought summary judgment dismissing the causes of action alleging medical malpractice and wrongful death, and the derivative cause of action, insofar as asserted against the Nephrology defendants and the Radiology defendants. In so doing, the court concurred with the original determination that those defendants established their prima facie entitlement to judgment as a matter of law, but agreed with the plaintiff that the opinions of her experts were not conclusory, and raised triable issues of fact.
“In order to establish the liability of a physician for medical malpractice, a plaintiff must prove that the physician deviated or departed from accepted community standards of practice, and that such departure was a proximate cause of the plaintiffs injuries” (Stukas v Streiter, 83 AD3d 18, 23 [2011]). “To prove proximate cause, plaintiffs [are] required to provide expert testimony establishing that it was more likely than not that defendant’s breach caused the . . . injury, but [are] not obligated] to eliminate all other potential causes” (Skelly-Hand v Lizardi, 111 AD3d 1187, 1189 [2013]; see Villa v City of New York, 148 AD2d 699, 701 [1989]).
A defendant seeking summary judgment “must make a prima facie showing that there was no departure from good and accepted medical practice or that the plaintiff was not injured thereby, and, in opposition, ‘a plaintiff must submit evidentiary facts or materials to rebut the defendant’s prima facie showing, *812 so as to demonstrate the existence of a triable issue of fact’ ” (Stukas v Streiter, 83 AD3d at 24, quoting Deutsch v Chaglassian, 71 AD3d 718, 719 [2010]). The defendants’ expert affirmations stated that, with a reasonable degree of medical certainty, the defendants comported with the accepted standards of medical care and that none of the treatment rendered by the defendants caused or contributed to the injuries alleged. In opposition, the plaintiffs experts stated categorically that, based upon the decedent’s medical history, the second procedure was a departure from good and accepted medical practice, and that, based upon the decedent’s symptoms after the second procedure, that second procedure was a proximate cause of his injuries. In reply, the Radiology defendants acknowledged that there “may” be an issue of fact as to whether it was a departure for the second procedure to have been performed within two days of the first, which would be attributable to Pannone, who cleared the decedent for the procedure, and the decedent, who consented to the procedure. Pannone sought to attribute that alleged departure to the decedent, who consented to the procedure.
It is clear from this record that issues of fact exist as to whether the performance of the second procedure within two days of the first procedure was in fact a departure, and as to who was responsible for that alleged departure, which warranted the denial of summary judgment (see McLean v 405 Webster Ave. Assoc., 98 AD3d 1090, 1094 [2012]). Since a single departure is in issue here, further differentiation between the acts or omissions of the various defendants was unnecessary to raise triable issues of fact as to the defendants’ liability (cf. Parrilla v Buccellato, 95 AD3d 1091, 1093 [2012]; Rebozo v Wilen, 41 AD3d 457, 459 [2007]).
The defendants claim that even if the second procedure did in fact cause the decedent’s injuries, those injuries may have been caused by a cholesterol embolism, which may occur spontaneously. Although the plaintiff’s radiologist indicated that the decedent’s injuries could have resulted from a cholesterol embolism induced by the second procedure, the plaintiffs nephrologist, citing objective facts of the decedent’s symptoms after the second procedure — which included leg pain, burning, vomiting, and dark urine — noted that those symptoms were “consistent with nephrotoxicity due to the IV contrast,” and “within a reasonable degree of medical certainty,” his opinion was that the decedent’s injuries were “directly and proximately caused by defendants’ malpractice, specifically[,] performing the second, contraindicated IV contrast” procedure. Thus, contrary to the defendants’ contention, their claim that the decedent’s injuries *813 could have been the result of a cholesterol embolism were addressed by the plaintiffs experts (see Fritz v Burman, 107 AD3d 936, 937 [2013]). As previously noted, the plaintiff was not obligated to eliminate all other potential causes for the decedent’s injuries (see Shelly-Hand v Lizardi, 111 AD3d at 1189; Villa v City of New York, 148 AD2d at 701). The plaintiff’s experts agreed that the second procedure caused the decedent’s injury, and the plaintiff’s nephrologist stated that the decedent’s symptoms indicated that those injuries were the result of the contrast used in the procedure.
“Summary judgment may not be awarded in a medical malpractice action where the parties adduce conflicting opinions of medical experts” (McKenzie v Clarke, 77 AD3d 637, 638 [2010]; see Adjetey v New York City Health & Hosps. Corp., 63 AD3d 865 [2009]). Here, the plaintiffs submissions were sufficient to raise triable issues of fact. Accordingly, upon reargument, the Supreme Court properly concluded that there were issues of fact which precluded the granting of summary judgment.