## Peralta v Urgent Med. Care, P.C.

2024 NY Slip Op 31057(U)

March 26, 2024

Supreme Court, Kings County

Docket Number: Index No. 520428/16

Judge: Genine D. Edwards

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part 80 of the Supreme
Court of the State of New York, held in and
for the County of Kings, at the Courthouse,
at Civic Center, Brooklyn, New York, on the
26th day of March 2024.

PRESENT:

HON. GENINE D. EDWARDS,

Justice.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
STEVEN O. PERALTA,

                        Plaintiff,

            - against -

URGENT MEDICAL CARE, P.C.,
BROOKLYN URGENT MEDICARE CARE, P.C.,
URGENT MEDICAL CARE, P.C., d/b/a
UMD URGENT MEDICAL CARE AND
BROOKLYN URGENT MEDICAL CARE,
BROOKLYN URGENT MEDICAL CARE, d/b/a
UMD URGENT MEDICAL CARE AND
BROOKLYN URGENT MEDICARE CARE,
SAMUEL BRIDE, M.D., and
ROBERT ARIA, M.D.,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**DECISION, ORDER, AND JUDGMENT**

Index No. 520428/16

Mot. Seq. No. 5-6

The following e-filed papers read herein:

**NYSCEF Doc Nos.:**

Notice of Motion, Affirmations, and Exhibits..........................84-104; 105-119
Affirmations in Opposition and Exhibits...............................122-124; 125-127
Reply Affirmations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .128; 129

In this action to recover damages for medical malpractice and lack of informed consent,

Samuel Bride, M.D. ("Dr. Bride"), and Robert Aria, M.D. ("Dr. Aria" and together with Dr.

Bride, "defendants"), separately move for summary judgment dismissing the respective claims

of Steven O. Peralta ("plaintiff") as against them. Plaintiff did not object to the dismissal of

(and thus effectively abandoned) his informed consent claim as against defendants. *See 114*

*Woodbury Realty, LLC v. 10 Bethpage Rd., LLC*, 178 A.D.3d 757, 114 N.Y.S.3d 100 (2d Dept.

2019); *Harsch v. City of N.Y.*, 78 A.D.3d 781, 910 N.Y.S.2d 540 (2d Dept. 2010). The

[* 1]

2

remainder of this Decision, Order, and Judgment addresses plaintiff's claims sounding in medical malpractice as against defendants.

## Summary

On March 19, 2016,[1] plaintiff, age 47, presented to defendant-in-default Brooklyn Urgent Medical Care, P.C. (the "PC"), with the chief complaint of a "right hand second digit injury" in a softball game.[2] Plaintiff was examined by Dr. Bride (the urgent care physician then on duty) who found that his new patient had a "[l]imited [range of motion in his] right index finger[,] secondary to pain."[3]

To find out what was wrong with plaintiff, Dr. Bride X-rayed his patient's right hand, with the focus on the right index finger.[4] Dr. Bride electronically transmitted X-ray images (accompanied by his instruction to "rule out fracture") to a teleradiology company for review and interpretation.[5] Dr. Aria, then working for the teleradiology company, was (and still is) a New York State-licensed and board-certified diagnostic radiologist.[6]

---

[1] All references are to calendar year 2016, unless otherwise indicated.

[2] *See* PC's medical records, page 1 of 3 (NYSCEF Doc No. 101) (the "PC's records"). When quoting from the PC's records (as well as from other medical records), the Court spelled out all abbreviations and corrected all typographical errors.

[3] *See* PC's records, page 2 of 3.

[4] *See* X-ray images of plaintiff's right hand (NYSCEF Doc No. 102).

[5] *See* Dr. Bride's deposition tr at page 20, lines 10-13 (NYSCEF Doc No. 98).

[6] *See* Dr. Aria's deposition tr at page 16, lines 3-14 (NYSCEF Doc No. 97).

3

Dr. Aria faxed to the PC his radiologic findings and impression concerning plaintiff's right index finger.[7] Dr. Aria's impression, as reflected in his written report, was that plaintiff sustained a "[n]on-displaced oblique fracture of the palmar aspect of the base of the proximal phalanx of the right second digit" (the "proximal phalanx fracture").[8] Dr. Bride reviewed Dr. Aria's written report, as indicated by Dr. Bride's placement thereon of his initials and date. Adhering to Dr. Aria's radiologic findings, Dr. Bride diagnosed plaintiff as having sustained a proximal phalanx fracture.[9] Dr. Bride's treatment plan for plaintiff, in light of Dr. Aria's radiologic findings, stated in full, as follows:

> Advised [the] patient to ice, and rest. Non-steroidal anti-inflammatory drugs for pain [and] inflammation. Immobilize with splint[.] Expected course – improvement over several weeks. *Follow up with orthopedics if signs/symptoms persist or worsen over protracted period.*[10]

One month later, on April 18th, plaintiff presented to nonparty Hospital for Special Surgery ("HSS") with complaints of pain in his right index finger.[11] An X-ray, followed by a CT scan, both performed at HSS on that date, revealed that plaintiff had sustained two fractures (with one of them being complex), rather than a single, relatively uncomplicated fracture that Dr. Aria previously reported to the PC; namely: (1) a "middle phalanx

---

[7] *See* Dr. Aria's Radiology Interpretation, dated March 19, 2016 ("Dr. Aria's report"), which is part of the PC's records.

[8] The Court assumes the parties' familiarity with basic anatomy and physiology.

[9] *See* PC's records, page 2 of 3 (Assessment/Plan section) ("Nondisplaced Fracture of Proximal Phalanx Of Right Index Finger, Initial Encounter for Closed Fracture") (original capitalization preserved; bold-face type omitted).

[10] *See* PC's records, page 2 of 3 (Assessment/Plan section) (emphasis added).

[11] *See* HSS's records, page 00001 (NYSCEF Doc No. 117).

[* 3]

4

comminuted volar lip fracture with proximal interphalangeal joint intra-articular extent" and with "slight dorsal joint subluxation" (the "middle phalanx fracture"); and (2) a "dorsal lip avulsion fracture of the distal phalanx," also known as the bony mallet deformity (the "bony mallet deformity").[12]  Ten days later, on April 28th, plaintiff underwent an elective, 46-minute, same-day surgery[13] (in the form of open reduction and internal fixation with a K-wire) for the middle phalanx fracture.[14]

Plaintiff's post-operative recovery was uneventful.   Five years later in November 2021, he continued to play softball in the same league.[15]

Meanwhile, on November 17, 2016, plaintiff commenced the instant action to recover damages for medical malpractice and lack of informed consent as against (among others) Drs. Bride and Aria.   Only Drs. Bride and Aria appeared in this action.   By order, dated

---

[12] *See* HSS's records at page 00002 (CT Scan Report, Findings & Impression).

[13] *See* HSS's records at page 00007 (General Information, Diagnosis Information, Case Tracking Events, and Panel Information).

[14] Surgery, as was performed on plaintiff, at HSS, (as opposed to what the surgeon initially contemplated), was limited to the open reduction, internal fixation of plaintiff's middle phalanx fracture with "a 4.5 K-wire" (rather than by way of a hemi-hamate arthroplasty).   The bony mallet deformity was left undisturbed to heal on its own because of the intraoperative finding of the prior injuries in that region.   As the surgeon explained his judgment (at page 2 of the Operative Record):

"Because [following the placement of the K-wire] the [proximal interphalangeal ("PIP")] joint was stable and because [the] patient had significant improvement in [his] range of motion without mechanical crepitation, it was decided at this point to not shock joint open and perform a hemi-hamate arthroplasty to restore [the full] congruity but rather to *accept the slight incongruity that persisted*."

Next, the C-arm fluoroscopy was used to *evaluate the bony mallet deformity*.   The patient had nearly healed [his] bony mallet deformity which appears to have been *a repeat bony mallet deformity* through a healed bony mallet malunion.   The distal fracture fragment and proximal fracture fragment moved as one unit indicating significant healing.   It was decided to not pin the PIP joint at this point."

HSS's records at 00040 (emphasis added).

[15] *See* Plaintiff's deposition tr (Nov. 3, 2021) at page 173, line 19 to page 174, line 5 (NYSCEF Doc No. 96).

5

June 21, 2018, the Court (Graham, J.) granted plaintiff leave to enter a default judgment against the PC and the remaining defendants (NYSCEF Doc No. 37). After discovery was completed and a note of issue/certificate of readiness was filed, the instant motions timely ensued. On December 15, 2023, the Court reserved decision on the instant motions.

## Standard of Review

"In moving for summary judgment dismissing a cause of action alleging medical malpractice, a defendant must establish, prima facie, that there was no departure or deviation from the accepted standard of care *or* that such departure or deviation was not a proximate cause of any injury to the plaintiff." *Attia v. Klebanov*, 192 A.D.3d 650, 143 N.Y.S.3d 408 (2d Dept. 2021). Where a defendant meets its prima facie burden as to *both elements* of a medical malpractice action, "the burden shifts to the plaintiff to rebut the defendant's showing by raising a triable issue of fact as to *both* the departure element *and* the causation element." *Stukas v. Streiter*, 83 A.D.3d 18, 918 N.Y.S.2d 176 (2d Dept. 2011). "Although conflicting expert opinions may raise credibility issues which can only be resolved by a jury, expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact." *Wagner v. Parker*, 172 A.D.3d 954, 100 N.Y.S.3d 280 (2d Dept. 2019). "In order not to be considered speculative or conclusory, expert opinions in opposition should address specific assertions made by the movant's experts, setting forth an explanation of the reasoning and relying on specifically cited evidence in the record." *Scopelliti v. Westmed Med. Group*, 193 A.D.3d 1009, 146 N.Y.S.3d 656 (2d Dept. 2021). "An expert opinion that is

6

contradicted by the record cannot defeat summary judgment." *Wagner v. Parker*, 172 A.D.3d 954, 100 N.Y.S.3d 280 (2d Dept. 2019).

## Discussion

### Dr. Bride

In his motion for summary judgment, Dr. Bride established his prima facie entitlement to judgment as a matter of law on plaintiff's cause of action sounding in medical malpractice, by way of (among other documents) the expert affirmation of Robert Gluck, M.D. ("Dr. Bride's expert"), a board-certified orthopedic surgeon with sub-certification in hand surgery. Dr. Bride's expert opined, based upon his review of the medical records, the deposition testimony, and the pleadings, that the treatment provided by Dr. Bride was in accordance with the accepted standard of care and that, in any event, Dr. Bride did not proximately cause plaintiff's alleged injuries. *See Kim v. North Shore Long Is. Jewish Health Sys., Inc.*, 202 A.D.3d 653, 162 N.Y.S.3d 132 (2d Dept. 2022). In particular, Dr. Bride's expert observed that Dr. Bride was "entitled to rely upon the training and expertise of other physicians acting within their respective areas of specialty, including a radiologist who has been tasked with reviewing [X]-rays to rule out a fracture," such as Dr. Aria. This astute observation reflected the long-established principle that "[a]lthough physicians owe a general duty of care to their patients, that duty may be limited to those medical functions undertaken by the physician and relied on by the patient." *Chulla v. DiStefano*, 242 A.D.2d 657, 662 N.Y.S.2d 570 (2d Dept. 1997), *lv. dismissed* 91 N.Y.2d 921, 669 N.Y.S.2d 263 (1998).

[* 6]

7

In opposition to Dr. Bride's prima facie showing, plaintiff's expert orthopedist ("plaintiff's expert") failed to raise a triable issue of fact.[16] Significantly, plaintiff's expert did not differentiate between the alleged acts or omissions of Drs. Bride and Aria, but merely stated in conclusory terms that *both defendants* should have observed and diagnosed (based on the X-ray images taken at the time) that plaintiff sustained a complex middle phalanx fracture, together with a bony mallet fracture (rather than a relatively uncomplicated proximal phalanx fracture).[17] *See Kim*, 202 A.D.3d 653, 162 N.Y.S.3d 132; *Ahmed v. Pannone*, 116 A.D.3d 802, 984 N.Y.S.2d 104 (2d Dept. 2014), *lv. dismissed* 25 N.Y.3d 964, 8 N.Y.S.3d 261 (2015), *rearg denied* 26 N.Y.3d 944, 17 N.Y.S.3d 61 (2015). Plaintiff's generalized failure to differentiate those physicians from each other was further compounded by his concurrent failure to submit record evidence showing that Dr. Bride, as an urgent care physician, departed from accepted standards of medical care by relying on the written interpretation of the X-ray films by Dr. Aria, a board-certified diagnostic radiologist. *See Tsitrin v. New York Community Hosp.*, 154 A.D.3d 994, 62 N.Y.S.3d 506 (2d Dept. 2017); *Micciola v. Sacchi*, 36 A.D.3d 869, 828 N.Y.S.2d 572 (2d Dept. 2007).

---

[16] *See* "Physician[']s Affirmation," dated September 9, 2023 (NYSCEF Doc No. 127).

[17] *See* Plaintiff's expert affirmation, ¶ 8 ("The interpretation of the *defendants*. . ."), ¶ 9 ("[I]t was a departure on the part of the *defendants*. . ."), ¶ 9 ("[I]t was a departure from good and accepted standards of medical care for *defendants*. . ."), ¶ 9 ("Additionally, . . . it was a departure from good and accepted standards of medical care for the *defendants*. . ."), ¶ 13 ("It is my opinion that *defendant's* failure. . .") (emphasis added in each instance). Although the latter instance used the word "defendant" in the singular, the difference was immaterial because plaintiff submitted the identical expert affirmation in opposition to both motions (*compare* NYSCEF Doc No. 127 *with* No. 124).

8

### Dr. Aria

Dr. Aria likewise made a prima facie showing of entitlement to judgment as a matter of law by way of (among other submissions) the expert affirmation of Mark Brandon, M.D. ("Dr. Aria's expert"),[18] as to both the departure and causation elements of plaintiff's medical malpractice claim as against him. Although plaintiff's expert raised a triable issue of fact as to the *departure* element, his (or her) opinion on the *causation* element was not supported by citations to record evidence.[19] *See Daniels v. Pisarenko*, 222 A.D.3d 831, 199 N.Y.S.3d 693 (2d Dept. 2023); *Martinez v. Quintana*, 138 A.D.3d 791, 29 N.Y.S.3d 529 (2d Dept. 2016) (granting the defendant radiologist's motion for summary judgment where, in opposition to his prima facie showing, the plaintiff's expert "cited to no record evidence to support his opinion that the plaintiff's alleged injuries were due to the undiagnosed fracture"), *lv. denied* 27 N.Y.3d 912, 39 N.Y.S.3d 381 (2016).

Plaintiff's expert's surmise and conjecture – that a prompt diagnosis of plaintiff's fractures would "*potentially* [have] prevent[ed] surgical intervention at [HSS]," and that with a prompt "referral to a hand surgeon . . . [his fractures] would have been reduced, splinted and treated [, thereby] providing him a *50% chance* of healing without surgical intervention"[20] – were insufficient to raise a triable issue of fact on the element of causation. *See Wijesinghe v.*

---

[18] *See* Dr. Brandon's Expert Physician Affirmation (NYSCEF Doc No. 88).

[19] Plaintiff's expert affirmation failed to specify the records – other than the X-ray films taken at the PC – which he (or she) reviewed in preparing his (or her) affirmation. *See* Plaintiff's expert affirmation, ¶ 3 ("The history from *the records I was provided. . .*") (emphasis added).

[20] Plaintiff's expert affirmation, ¶¶ 12 and 14 (NYSCEF Doc No. 124) (emphasis added).

9

*Buena Vida Corp.*, 210 A.D.3d 824, 178 N.Y.S.3d 184 (2d Dept. 2022). Lastly, plaintiff's expert affirmation failed to address the specific assertions made by Dr. Aria's expert on the element of causation. *See Townsend v. Vaisman*, 203 A.D.3d 1199, 166 N.Y.S.3d 221 (2d Dept. 2022); *Kim*, 202 A.D.3d 653, 162 N.Y.S.3d 132 (2d Dept. 2022).

The Court considered the parties' remaining contentions and found them either moot or without merit in light of its determination.

## Conclusion

Based on the foregoing, it is

**ORDERED** that Dr. Bride's motion for summary judgment is *granted in its entirety*, and it is further

**ORDERED** that Dr. Aria's motion for summary judgment is *granted in its entirety*, and it is further

**ORDERED** that plaintiff's complaint is dismissed in its entirety as against Drs. Bride and Aria, without costs and disbursements in each instance, and it is further

10

**ORDERED** that the caption is amended to read as follows:

-----------------------------------X

STEVEN O. PERALTA,

Plaintiff,

- against -

URGENT MEDICAL CARE, P.C.,
BROOKLYN URGENT MEDICARE CARE, P.C.,
URGENT MEDICAL CARE, P.C., d/b/a
UMD URGENT MEDICAL CARE AND
BROOKLYN URGENT MEDICAL CARE, and
BROOKLYN URGENT MEDICAL CARE, P.C. d/b/a
UMD URGENT MEDICAL CARE AND
BROOKLYN URGENT MEDICARE CARE,

Defendants.

-----------------------------------X

; and it is further

**ORDERED** that the ADR conference, currently scheduled for May 14, 2024, at 10 a.m., is canceled, and it is further

**ORDERED** that plaintiff may schedule an inquest on damages as against the PC and the other defendants-in-default in accordance with the aforementioned default order, dated June 21, 2018 (Graham, J.), and it is further

**ORDERED** that Dr. Aria's counsel is directed to electronically serve a copy of this Decision, Order, and Judgment with notice of entry on plaintiff's counsel and on Dr. Bride's counsel, as well as to electronically file an affidavit of service thereof with the Kings County Clerk.

This constitutes the Decision, Order, and Judgment of the Court.

ENTER

Hon. Genine D. Edwards
J. S. C.

[* 10]